IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SNAPRAYS, LLC dba SNAPPOWER, a Utah limited liability company<br><br>Plaintiff<br><br>v.<br><br>AMERICAN TACK & HARDWARE CO., INC., a New York corporation,<br><br>Defendant | Case No. 3:24-cv-01228-B<br><br>Judge Jane Boyle<br>Magistrate Judge David L. Horan |

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DEFENDANT AMERICAN TACK & HARDWARE CO., INC.'S RESPONSES TO SNAPPOWER'S DISCOVERY REQUESTS FOR PRODUCTION OF DOCUMENTS**

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Local Rule 7.1, and Miscellaneous Order No. 62 paragraph 2-6(b), Plaintiff Snaprays, LLC dba SnapPower ("SnapPower" or "Plaintiff") submits this responsive brief in support of Plaintiff's opposed motion to compel (ECF No. 66).

## I. SnapPower Satisfied Rule 37(a)'s Requirements of Specificity and To Meet and Confer

Defendant's argument that Plaintiff failed to adequately meet and confer prior to bringing its motion is incorrect, and to the extent further specificity regarding Defendant's deficiencies is not in the record that is a problem of Defendant's own making. Defendant acknowledges that Plaintiff held the required Rule 37(a) meet and confer with Defendant's counsel on March 3, 2025

(the "March Meet and Confer"). ECF No. 72, PageID.4984 ¶3; Brunette Apr. 29, 2025 Decl., ¶ 5.[1] Defendant argues that its counsel "...asked SnapPower's counsel . . . to fully articulate any issues SnapPower may have, so that American Tack could evaluate those issues." ECF No. 72, PageID.4984 ¶3. However, Plaintiff's counsel, who initiated and directed the March Meet and Confer, declares that Defendant's counsel's statement is inconsistent with what Defendant's counsel said on the call. Brunette Apr. 29, 2025 Decl., ¶ 6 Defendant's counsel grew frustrated and stopped the discussion from continuing item-by-item. *Id.* Plaintiff's counsel declares:

> [T]his is not consistent with what Defendant's counsel said on the call. In that meeting, we started going through the items in the deficiency letter one-by-one. However, part way through that process, counsel for Defendant grew frustrated and stopped the discussion from continuing item-by-item. After some back and forth about how to proceed, counsel for Defendant said they thought they could abbreviate the process because they thought Defendant had produced substantially everything on all of the requests, notwithstanding objections. They stated that they would check to confirm that they could accurately make that representation and get back to us.

*Id.* Given Defendant's counsel's refusal to go through each item during the March Meet and Confer it is disingenuous for Defendant to now argue that Plaintiff failed to meet and confer and identify the specific deficiencies to each request.

Nevertheless, in response to Defendant's request that Plaintiff prioritize and identify issues with the RFPs because (1) Plaintiff's initial deficiency letter found fault with essentially all of Defendant's written discovery responses; and (2) it would be too much work for Defendant to go through all of them and revise Defendant's responses, Plaintiff sent the March 12, 2025 response letter (ECF No. 72, Ex. A), which identified importation documents as a top priority. Brunette Apr. 29, 2025 Decl., ¶ 8.

[1] Mr. Brunette was the lead partner on this case on behalf of SnapPower at the time of the March Meet and Confer, a role that has since then been assumed by Chad Nydegger.

Defendant also argues the single March Meet and Confer was not sufficient to satisfy Rule 37(a)'s requirements. Even if an additional meet and confer was necessary (it was not), Plaintiff satisfied its obligations. Plaintiff stated in its March 12, 2025, letter that "if there are any document requests where Defendant cannot confirm that it has searched for all responsive documents and produced all responsive non-privileged documents, please let us know in the next two weeks [when] you are available to meet and confer as to those remaining requests." However, after the March 12th letter's two-week request, Defendant stopped responding. Brunette Apr. 29, 2025 Decl., ¶ 10. Defendant previously maintained it would confirm what was fully produced and what was not and get back to Plaintiff, but did not. *Id.* at ¶ 6, ¶ 10. Plaintiff followed up repeatedly, but Defendant remained silent. *Id.* at ¶ 11. After receiving no response and the clock for discovery continuing to wind down, Plaintiff determined this Court's intervention would be necessary because Defendant did not do what it said it would do. *Id.* at ¶ 12.

Plaintiff's motion to compel is also not the first time that Plaintiff meaningfully identified and articulated specific concerns relating to these specific requests. The importation document RFPs were identified in the initial February 18, 2025 letter (ECF No. 66-2, PageID.4907-4911) and again in the follow up March 12, 2025 letter as a key issue (ECF No. 72-1, Ex. A). Brunette Apr. 29, 2025 Decl., ¶ 8. The specific requests directed to importation documents have been a central issue raised by Plaintiff throughout the lengthy meet and confer process. Plaintiff has satisfied the requirements both the specificity and meet and confer requirements of Rule 37(a).

## II. Plaintiff's Narrowing of Asserted Claims Did Not Narrow the Time Period for Discovery

Defendant's argument that Plaintiff's recent reduction of claims excuses its failure to meet its discovery obligations is a convenient red herring. Defendant asserts that Plaintiff's reduction of claims "*drastically changes* – and shortens – the window of potential infringement and

correspondingly the scope and time frame for relevant documents and information." AmerTac Brief (ECF No. 70), pg. 4 (emphasis added). Defendant's conclusory statement is incorrect, inconsistent with its previous representations, and insufficient.

The claims asserted in the case have been reduced, but the *Accused Products* remain unchanged. Thus, Defendant's assertion that the reduction of claims "drastically changes" the scope of discovery is incorrect. As established in Plaintiff's motion, the statute of limitations does not inherently limit the scope of discovery. *Janvey v. Proskauer Rose LLP*, No. 3:13-CV-477-N-BG, 2017 WL 11499756, at *7 (N.D. Tex. June 19, 2017) ("While . . . [the statute of limitations] may ultimately limit the time span for the Receiver's potential recovery . . . the issue remains unresolved during the pretrial phase of the case and constitutes fair game for the discovery process"); *Gottesman v. Santana*, No. 16-CV-2902 JLS (JLB), 2017 WL 5889765, at *5 (S.D. Cal. Nov. 29, 2017) ("The statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery"); *Allen v. Similasan Corp.*, No. 12-CV-376-BAS-JLB, 2014 WL 2212120, at *2 (S.D. Cal. May 27, 2014) (statute of limitations is an affirmative defense that does not generally affect discovery). Defendant neither addresses this case law nor offers any case law or statute to support its position that the statute of limitations also serves as a time bar for discovery of conduct relevant to the issues of willfulness and exceptionality. The law clearly does not so hold. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983) (information concerning events that occurred outside time limit for actionable claims were deemed discoverable); *V.D. Anderson Co. v. Helena Cotton Oil Co.*, 117 F. Supp. 932, 942 (E.D. Ark. 1953) (holding, in patent suit, plaintiff's knowledge of defendant's process to be relevant because it might lead to admissions with important bearing on infringement); *Struthers*

*Scientific & Int'l Corp. v. General Foods Corp.*, 45 F.R.D. 375, 380–381 (S.D. Tex. 1968) (discovery of data relating to imports and exports of patented products is appropriate).

Defendant also argues the window for willful infringement has been reduced by three years. AmerTac Brief (ECF No. 70), pg. 4. The issues of willfulness and an exceptional case include all conduct relevant to the Accused Products and are not limited in time. Courts consider all facts and circumstances related to a defendant's willful conduct and assessing whether a case is exceptional when exercising its discretion to enhance a damages award. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 545, 134 S. Ct. 1749, 1751, 188 L. Ed. 2d 816 (2014) ("District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances."); *accord Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563, 134 S. Ct. 1744, 1748, 188 L. Ed. 2d 829 (2014); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1342 (Fed. Cir. 2004) ("Determination of willfulness is made on consideration of the totality of the circumstances[.]" (citing *Giustafson, Inc. v. Intersystems Indus. Prods., Inc.*, 897 F.2d 508, 510 (Fed. Cir. 1990)). Defendant is incorrect that narrowing the asserted claims "drastically changes" the scope of discovery. Rather, the scope of discovery has changed little if at all.

Defendant's assertion that narrowing of Asserted Claims excuses it from producing responsive sales information is inconsistent with and even contradicts its prior representations. Defendant's response to Interrogatory No. 3 stated that it would produce documents reflecting sales of accused products "within the applicable statute of limitations," which goes back to May 21, 2018. Defendant subsequently and consistently only produced sales information back to January 2019. Based on the foregoing, to the extent any sales of Accused Products occurred between May 21, 2018 and January 2019, they should have already been disclosed. As Defendant

implicitly represented that no accused products (including the first version) were sold in 2018, it is disingenuous for Defendant to now delay and refuse to produce information as that is significantly overdue, especially under the guise of needing to reassess the scope of discovery for a time during which it previously represented no Accused Products were sold. Indeed, Plaintiff's removal of the '180 patent was based in part on Defendant's prior discovery responses and representations regarding Defendant's sales. Defendant should not now benefit from its misleading disclosures. Plaintiff needs the 2018 sales information to determine whether Plaintiff needs to amend its selection of Asserted Claims to bring back the earliest patents to capture the undisclosed sales of Accused Products.

Defendant's statement that narrowing the claims "drastically changes" the scope of discovery is insufficient because Defendant does not explain *how* the scope of discovery "drastically changed." As demonstrated above, it has not so changed. Moreover, Defendant should have complied with Plaintiff's requests for importation documents months before the reduction of claims. Defendant now points to the reduction of claims as a convenient—but ultimately inadequate—excuse for its discovery deficiencies.

## III. The Court Should Overrule AmerTac's Objections Regarding Importation Records

Defendant asserts it "does not have *complete* importation records in its possession or control" but has yet to produce *any* of those records. AmerTac Brief (ECF No. 70), pg. 5 (emphasis added); *see also* Mencel Apr. 25, 2025 Decl. (ECF No. 71), pg. 1, ¶ 2. Defendant also admits "American Tack may have some documents relating to importation (e.g., emails or email attachments)." *Id.* While AmerTac does not have all its importation documents "in its possession," it does not deny that it has *control* over those documents through "various import brokers with whom AmerTac works." AmerTac Brief (ECF No. 70), pg. 5. Defendant cannot evade production

of documents and information under ***its control*** merely because they are in the *possession* of a third party. *See Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 471 (S.D. Fla. 2011) (the court found a party's discovery responses should reflect information under the party's control, even if the information is possessed by a nonparty); *U.S. Equal Emp. Opportunity Comm'n v. MVM, Inc.*, 2020 WL 6482193, at *1 (D. Md. Nov. 2, 2020) (affirming order for sanctions where party had control over documents that were in a non-party's possession).

Defendant also asserts that gathering the importation documents in its possession would be unduly burdensome because "those documents are not comprehensive and are not organized in a way that American Tack could easily identify or gather those documents." *Id.* Defendant's argument here also fails. Where a movant shows a request is relevant and proportionate to the needs of a case—as Plaintiff has done here—Defendant's bare-bones "unduly burdensome" objection, without more, should be denied. The objecting party carries the burden of establishing that the proportionality requirements have not been met and must specifically identify the "undue burden," i.e., state how long it would take, how expensive it would be, etc. to properly assert its "undue burden" objection. *See Baker v. Walters*, 652 F.Supp.3d 768, 775-788 (N.D. Tex. Jan. 26, 2023) (where this Court granted a motion to compel where there were untimely objections, objections to relevancy were not sufficiently specific, and held the overly broad objections did not excuse the opposing party from having to respond to the portion that was indisputably not overly broad and unduly burdensome); *Fisher v. Nat'l R.R. Passenger Corp.*, 152 F.R.D. 145, 148–149 (S.D. Ind. 1993) (burden on party opposing discovery); 7 Moore's Federal Practice - Civil § 37.22. Here, Defendant has not produced any importation documents. Any burden in doing so is not "undue" to the extent that Defendant has failed to exercise reasonable care in the maintenance of

its import documents, which it must do under the laws and rules of U.S. Customs. *E.g.* 19 CFR § 163.2 (requiring importers to maintain records). Defendant has failed to meet its burden.

Defendant further argues that importation records are irrelevant to the infringement and damages analysis. As support, Defendant asserts it has already provided technical documents regarding the design of its products for Plaintiff to evaluate infringement along with sales records for the damages analysis. *See* AmerTac Brief (ECF No. 70), pg. 5-6. Thus, Defendant only wants to produce a single, self-authored, carefully worded, free-of-willfulness-evidence document it calls an "importation summary document." *Id.* at pg. 6. Such a document would curtail the discovery process.

First, importation is different than sales and constitutes its own statutory basis for infringement. *See* 35 U.S.C. § 271(a) ("[W]hoever without authority makes, uses, offers to sell . . . or *imports* into the United States any patented invention during the term of the patent therefor, infringes the patent"). To illustrate, if Defendant imported 1,000,000 products but only sold 10,000 of them, the entire 1,000,000 still infringe under 35 U.S.C. § 271(a). Second, Defendant does not dispute that the underlying importation documents may be used as evidence to prove "willfulness" and an "exceptional case." This is because those documents may show that importation of Defendant's Accused Products were halted by Plaintiff's general exclusion order ("GEO") so Defendant altered its description of the Accused Products on importation documents or took other measures to avoid the GEO and resume importation of the Accused Products. The importation documents are certainly relevant to Defendant's *mens rea* for willful infringement and exceptionality in this case. Allowing Defendant to create its own "importation summary" document and avoid producing relevant original importation documents and communications would further incentivize and reward misleading conduct.

## IV. The Court Should Overrule Defendant's Relevance and Scope Objections Related to Communications Regarding the U.S. Customs and Border Protection.

The relevance of Defendant's original importation records to infringement and willfulness, as presented in the preceding section, requires that Defendant's relevance and scope objection be overruled. Defendant argues its objections should be sustained "primarily because the request is not limited to communications regarding the Asserted Patents – which were not a basis for the CBP's issuance of the [GEO]." AmerTac Brief (ECF No. 70), pg. 7. However, Defendant admits that its products—the Accused Products—were excluded from importation by the GEO. *Id.* ("SnapPower later accused American Tack's *products* of violating the [GEO] and secured a ruling from the CBP precluding certain of American Tack's *products*.")(emphasis added). The patents underlying the GEO are in the same family as the Asserted Patents.[2] Further, SnapPower sent notice to AmerTac's counsel on October 15, 2020, (copy attached hereto as Exhibit A, page four (4)) alleging both violations of the GEO and of six of the seven Asserted Patents in this case. Thus, Defendant's communications with Customs regarding the GEO and CBP Ruling Letter are relevant to willfulness, including whether AmerTac knew or should have known that the Accused Products infringed the SnapPower's Patents in the GEO and satisfied similar limitations in the Asserted Patents. Defendant's communications regarding Customs are also relevant because that information may undermine AmerTac's reliance on opinions of counsel produced in this case concerning the Accused Products and infringement of the Asserted Patents. Plaintiff's requests are carefully worded to avoid the discovery games Defendant insists on playing. Moreover, even if the requests are found to be overbroad in some respect, Defendant is not excused from producing

---

[2] For example, the '045 Patent, asserted here, is a continuation of and shares the same specification as, SnapPower's U.S. Patent No. 9,917,430, which supports the GEO and Customs Ruling Letter HQ H334472, which found that the Accused Products are subject to the general exclusion order. ECF No. 66-2 at 103.

the documents and information covered by the requests that are undisputedly *not* overbroad, i.e., documents and information limited to the Accused Products. Here, RFP 95 seeks communications regarding asserted "Powered Cover Plates," a defined term[3], or "SnapPower." Plaintiff's RFP 95 and others are reasonably tailored to information that is relevant to its claims in this case and the Court should thus grant Plaintiff's motion.

## V. Supplemental Interrogatory Answers

Defendant argues its untimely objections served in its supplemental responses require a further meet and confer before a motion to compel can be filed. *See* AmerTac Brief (ECF No. 70), pg. 7-8. Under Federal Rules of Civil Procedure 34, a responding party must serve any objections to a request for production within 30 days after being served with the discovery request. *See* Fed. R. Civ. P. 34(b)(2). If raising new, untimely objections in Defendant's supplemental responses (served roughly six months late) were to require a new meet and confer then such a rule would allow a party to continually delay discovery and a motion to compel by simply serving additional objections after each meet and confer, thereby requiring a new meet and confer and forever preventing the motion to compel from being filed. Unsurprisingly, Defendant provides no case supporting its argument requiring a new meet and confer following each supplemental response that fails to remedy the deficiencies of the prior meet and confer and raises new untimely objections.

## VI. Conclusion

WHEREFORE, for the reasons stated herein and those in Plaintiff's motion to compel, SnapPower respectfully requests that the Court grant its motion to compel.

---

[3] Plaintiff's RFPs define "Powered Cover Plate" to mean "a cover plate for an electrical receptacle with built-in functionality that does not plug into the receptacle, including without limitation the GloCover and LumiCover products of AmerTac."

Dated: April 30, 2025

Respectfully submitted,

*/s/ Monica Litle Goff*
Monica Litle Goff
Texas Bar No. 24102101
mgoff@carterarnett.com
**CARTER ARNETT PLLC**
8150 N. Central Expressway
Suite 500
Dallas, Texas 75206
T: 214.550.8188 | F: 214.550.8185

Elliott J. Williams, Oregon Bar No. 144835
elliott.williams@stoel.com
Nathan C. Brunette, Oregon Bar No. 090913
nathan.brunette@stoel.com
STOEL RIVES LLP
760 SW Ninth Ave., Suite 3000
Portland, OR 97205
Telephone: (503) 294-9571

Chad E Nydegger
Workman Nydegger
60 East South Temple
Ste 1000
Salt Lake City, UT 84111
Telephone: 801-533-9800

C. Brenton Kruger
brent.kruger@solidcounsel.com
Scheef & Stone, LLP
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214-706-4249
Michael C. Smith, Texas Bar No. 18650410
michael.smith@solidcounsel.com
Scheef & Stone, LLP
113 East Austin Street
Marshall, Texas 75670
Telephone: (903) 938-8900

**ATTORNEY FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I certify that the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic filing system in accordance with the Federal Rules of Civil Procedure on April 30, 2025.

*/s/ Monica Litle Goff*
Monica Litle Goff