UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SNAPRAYS LLC d/b/a SNAPPOWER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:24-CV-1228-B |
| | § | |
| AMERICAN TACK & HARDWARE CO., INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

<u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are the parties' Claim Construction Briefs. The Court held a claim construction hearing on May 20, 2025. The Court adopts the following constructions of the disputed claim terms.

I.

BACKGROUND

This is a patent infringement case. Plaintiff SnapRays LLC d/b/a SnapPower ("SnapPower") developed "powered electrical outlet covers" that, in addition to covering outlets, can also provide LED lighting or act as a USB charger. Doc. 1, Compl., ¶ 12. SnapPower received seven patents for its inventions. *Id.* ¶¶ 14–20. SnapPower alleges that Defendant American Tack & Hardware Co. Inc. ("American Tack") sells outlet cover plates that infringe SnapPower's patents. *Id.* ¶ 25.

SnapPower originally alleged that American Tack infringed 105 claims across SnapPower's seven asserted patents. Doc. 59, Order, 1. The Court ordered SnapPower to reduce the number of claims it was asserting to 20. *Id.* at 3. SnapPower now alleges that American Tack infringed 20 claims

across five patents. Doc. 62, Resp., 1. The parties dispute the meaning of 49 claim terms. The Court addresses the disputed claim terms below.

## II.

## LEGAL STANDARD

Patent infringement lawsuits have two primary steps. "The first step is determining the meaning and scope of the patent claims asserted." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). This step is called claim construction and requires the Court to decide the meaning of the disputed claim terms. Second, after deciding what the patent covers, the Court then addresses whether the defendant's products infringe the patent. *See id.*

"Claim construction is a question of law." *Tempo Lighting, Inc. v. Tivoli, LLC*, 742 F.3d 973, 977 (Fed. Cir. 2014). When an inventor files a patent application with the Patent and Trademark Office ("PTO"), the patent application will include various "claims" that define the legal scope of the patent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) ("[T]he claims of a patent define the invention to which the patentee is entitled the right to exclude." (citation omitted)). The general rule of claim construction is that claim terms must be given their plain and ordinary meaning. *Id.* The plain and ordinary meaning of a claim term is the "meaning that the term would have to a person of ordinary skill in the art." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1377 (Fed. Cir. 2021).

The construction of the claim terms must be "consistent with the specification, which is the single best guide to the meaning of the disputed term." *Seabed Geosolutions (US) Inc. v. Magseis FF LLC*, 8 F.4th 1285, 1287 (Fed. Cir. 2021). The specification must sufficiently describe the invention to allow "any person skilled in the art to which it pertains . . . to make and use the [invention]." 35

U.S.C. § 112 ¶ 1. The specification often includes examples of the invention and the patentee's preferred embodiments. However, the scope of the patent is not usually limited by preferred embodiments listed in the specification. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.").

When determining the meaning of disputed claim terms, courts also consider the patent's prosecution history, *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004), which is a "complete record of the proceedings before the PTO," and provides "evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317.

Courts can consider external evidence if the intrinsic evidence is ambiguous in defining the scope of the invention. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). Extrinsic evidence includes "evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Id.* (citations omitted).

A claim term is not given its plain and ordinary meaning "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during [the] prosecution [history]." *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012). A patentee acts as its own lexicographer only if it "'clearly set[s] forth a definition of the disputed claim term' other than its plain and ordinary meaning." *Id.* (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). And a patentee disavows the full scope of a claim term only if "the specification [or prosecution history] makes clear that the invention does not include a particular feature . . . even though the

language of the claims . . . might be considered broad enough to encompass the feature in question."

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001).

## III.

## DISPUTED TERMS

SnapPower alleges that American Tack infringed twenty claims across five patents: U.S. Patent No. 10,109,945 ("the '945 Patent"); U.S. Patent No. 10,373,773 ("the '773 Patent"); U.S. Patent No. 10,381,788 ("the '788 Patent"); U.S. Patent No. 10,381,789 ("the '789 Patent"); and U.S. Patent No. 10,404,045 ("the '045 Patent"). Doc. 62, Resp., 2. The parties dispute the meaning of 49 terms in the asserted claims. The Court will address each disputed term in turn. The Court will list the term, each party's proposed construction, and then the Court will explain its construction.

### A.    The '945 Patent

The parties dispute the meaning of nine terms in the '945 patent.

### 1.    Prong

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., a projecting part. Doc. 43, Jt. Chart, 21.

- American Tack's proposed construction: A unitary, flexible structure for contacting a screw terminal. Alternatively, American Tack argues this term is indefinite. *Id.*

The Court will adopt the plain, ordinary meaning of "prong:" a projecting part. "Prong" is used in several claims in all five patents at issue in this lawsuit. The parties agree that "prong" has the same meaning in every claim in all five patents. *See* Doc. 47, Pl.'s Br., 13, 19, 23, 30, 35 (arguing that "prong" has the same meaning in all five patents); *see* Doc. 50, Resp., 19–22 (same).

"Prong" has a plain and ordinary meaning that is obvious to a lay judge, which means that a general dictionary can be used to help define the term. *See Phillips*, 415 F.3d at 1314. A prong is defined as "a projecting part." *Prong*, MERRIAM-WEBSTER'S DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/prong.

The claim language used in the '945 Patent further supports this construction. Claim 1 of the '945 patent provides a thorough description of a prong: "the prong comprising: an upright extending rearward away from the back surface of the front plate in the transverse direction, a resilient contact located on an inboard side of the upright, and the resilient contact having a bow shape and comprising a first end, second end, and middle portion." Doc. 1-4, '945 Patent, 16:5–11. In other words, the prong starts at the front plate and then part of the prong—the upright[1]—projects away from the front plate.

This construction is also consistent with the '945's patent's specification.[2] The specification does not include a different definition of prong, nor does it indicate that a person of ordinary skill in the art would think that "prong" has a different definition than the one the Court has provided. Thus, the Court adopts the ordinary meaning of prong.

American Tack first argues that the asserted patents' specifications do not support giving "prong" this broad of a construction. Doc. 50, Resp., 22. At the Markman hearing, American Tack contended that prong cannot be given its plain, ordinary meaning because "prong" has the same definition as "spring clip."[3] American Tack cites one sentence in the specification and a declaration

---

[1] The Court will explain the meaning of upright later in this Section.
[2] The parties agree that the specifications of all five patents are substantially the same for the term "prong." *See generally* Doc. 47, Pl.'s Br.; *See* Doc. 50, Resp., 23–24.
[3] Spring clip is a claim that that the parties previously disputed but is no longer at issue after SnapPower reduced the number of asserted claims.

from SnapPower's expert witness to support this argument. Figures 14A and 14B from the '045 Patent's specification provide "a side view and a perspective rear view of a spring clip/prong." Doc. 1-8, '045 Patent, 2:32–33. And SnapPower's expert, Dr. Horenstein, explained that a spring clip and a prong are used as synonyms in the '945 Patent. Doc. 47-1, Dr. Horenstein Decl., ¶ 55. So the argument goes, "prong" cannot mean a projecting part because "spring clip" and "prong" mean the same thing, and the plain, ordinary meaning of "spring clip" is narrower than a projecting part. *See* Doc. 50, Resp., 3–4. This argument fails to demonstrate that SnapPower acted as its own lexicographer and changed the definition of "prong" for three reasons.

First, the specifications do not "clearly set forth a definition of [prong] other than its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365 (citation omitted). Importantly, specifications do not say that a prong and a spring clip are the same thing. Instead, one sentence in the '045 Patent's Specification explains that Figures 14A and 14B show a view of a "spring clip/prong." Doc. 1-8, '045 Patent, 2:32–33. This could mean that a prong and a spring clip are the same thing, or it could mean the Specification is trying to disclose an embodiment that can use either a spring clip or a prong. This isolated, ambiguous sentence is insufficient for SnapPower to "clearly set forth a definition of [prong] other than its plain and ordinary meaning." *Thorner*, 669 F.3d at 1365 (citation omitted). Thus, SnapPower did not act as its own lexicographer and craft a definition of "prong" that is narrower than its plain, ordinary meaning.

Second, Dr. Horenstein's declaration does not establish that the Court should narrow the meaning of "prong." The Court does not believe that extrinsic evidence is necessary for constructing this term, *see Vitronics Corp.*, 90 F.3d at 1583, but even if the Court considered this evidence, Dr. Horenstein's declaration does not support American Tack's proposed construction. Dr. Horenstein

testified that "'prong' is used in the same sense as the term 'spring clip' . . . to refer generally to a resilient protrusion which is used to extract power from a receptacle." Doc. 47-1, Dr. Horenstein Decl., ¶ 55. He elaborates that because the '945 Patent does not use the term "spring clip," a "'prong' *serves a similar purpose* and may be interpreted as a synonym for 'spring clip.'" *Id.* (emphasis added). Thus, Dr. Horenstein did not testify that a person of ordinary skill in the art would understand that prong and spring clip have the same *meaning*—instead, he explained that a prong and spring clip are used for the same *purpose*. Therefore, even if the Court considered this extrinsic evidence, it would not support American Tack's argument.

Third, even if SnapPower acted as its own lexicographer and gave "spring clip" and "prong" the same definition, the Court would still need to decide which term's plain, ordinary meaning controls. The plain, ordinary meaning of "prong" is a projecting part, and the plain, ordinary meaning of "spring clip" is purportedly something narrower than that. Thus, if the Court concluded that a prong and a spring clip were the same thing, the Court would need to choose one of these competing meanings to give both terms. At the hearing, American Tack emphasized that because "spring clip" is narrower than "prong," the Court should give "prong" a narrower construction than a projecting part. But even if a "prong" and "spring clip" needed to have the same construction, neither the specification nor the claim language indicates whether "prong" should be narrowed or whether "spring clip" should be broadened. And American Tack has not explained why "prong" should be given the plain, ordinary meaning of "spring clip" instead of the Court construing a spring clip to be "a projecting part." This ambiguity further demonstrates how SnapPower did not expressly and unambiguously narrow the scope of "prong" to mean less than its plain, ordinary meaning. *See Thorner*, 669 F.3d at 1365.

Next, American Tack's proposed construction of "prong"—a unitary, flexible structure for contacting a screw terminal—is not supported by the claim language or the specification. American Tack's proposed construction imposes three limitations—"unitary," "flexible," and "contacting a screw terminal"—that are features of various preferred embodiments that SnapPower disclosed in the asserted patents' specifications. Figure 10A describes a prong that "may or may not be paired with . . . a separate insulating wall." Doc. 1-4, '945 Patent, 13:38–41. This is presumably where American Tack identified the "unitary" requirement.[4] Figure 10B then describes a "flexible prong," which is presumably where American Tack found the "flexible" limitation. *Id.* at 13:45. And Figures 10C and 10D describe a prong that "is brought into contact with the screw terminal," which is where American Tack likely got the "contacting a screw terminal" limitation. *Id.* at 13:54–61. The Court rejects American Tach's approach of using different limitations in the specification's preferred embodiments to craft a construction of the disputed claim term for three reasons.

First, American Tack's proposed construction is inconsistent with the plain, ordinary meaning of the word "prong." None of American Tack's proposed limitations are provided in the claim language. Further, the claim language forecloses the possibility that the prong must be unitary. Claim 1 of the '945 patent provides that a prong has at least two parts: (1) an upright that extends away from the face plate and (2) a resilient contact that is attached to the upright. Doc. 1-4, '945 Patent, 16: 5–11. Additionally, nothing in the claim language establishes that the prong must be

---

[4] It is not entirely clear where American Tack got the "unitary" limitation, but much of its brief argues that American Tack's outlet cover plates do not infringe the asserted patents because American Tack's cover plates use "an insulating wall that is integral with a back plate," while SnapPower supposedly only disclosed a cover plate with a separate insulating wall. Doc. 50, Resp., 1. The Court presumes this is where American Tack derived the "unitary" limitation.

flexible or that it must contact a screw terminal. Thus, a person of ordinary skill in the art would not think that a prong has these three limitations.

Second, while a claim must be construed in accordance with the specification, "particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc.*, 156 F.3d at 1187. This rule flows from the principle that the specification *describes* the invention, but the claim terms *define* the scope of the patent. *See Phillips*, 415 F.3d at 1312. Thus, descriptions or embodiments located in the specification generally cannot be used to narrow the scope of the claims. *See Aventis Pharms. Inc. v. Amino Chemicals Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) ("The written description and other parts of the specification, for example, may shed contextual light on the plain and ordinary meaning; however, they cannot be used to narrow a claim term to deviate from the plain and ordinary meaning."). Therefore, while some of the preferred embodiments may have one or more of these limitations, that does not mean the '945 patent only protects an invention containing all three of the limitations. For example, Figure 10B features a cover plate with a flexible prong. Doc. 1-4, '945 Patent, 13:45. Thus, the scope of the term "prong" includes some prongs that are flexible. However, that does not mean that all prongs must be flexible.

Third, American Tack's proposed construction would exclude several preferred embodiments in the '945 Patent. "[A] claim construction that would exclude the preferred embodiment is rarely, if ever, correct." *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) (citation omitted). American Tack's proposed construction of "prong" is the result of picking three different characteristics that are unique to different preferred embodiments. However, after reviewing the specification, it does not appear that any preferred embodiment has all three characteristics. For example, some embodiments, such as the prong disclosed in Figures 7A–7D, do

not specify whether the prong is flexible. Doc. 1-4, '945 Patent, 11:59–67. But Figure 10A depicts a prong that "*may . . .* be flexible enough to compress to pass through a narrow opening." *Id.* at 13:42–44. Thus, Figures 10A and 7A–7D appear to disclose at least some prongs that are not flexible. If the Court's construction of "prong" required the prong to be flexible, the Court would potentially exclude some of the '945 Patent's preferred embodiments. Similarly, Figure 2D provides that "[t]he two opposing prongs may contact *either* the load or the line screw terminals." *Id.* at 4:60–61 (emphasis added). Thus, reading the "contacting a screw terminal" limitation into "prong" would potentially exclude the prong disclosed by Figure 2D.

In sum, American Tack's proposed construction of "prong" deviates from the term's plain, ordinary meaning, and it is not supported by the specification because the '945 Patent's preferred embodiments do not have all three of American Tack's proposed limitations.

Alternatively, American Tack argues that "prong" is indefinite because it lacks sufficient "written description support." Doc. 50, Resp., 22. The claims in a patent "must particularly point out and distinctly claim the subject matter regarded as the invention." *Gravel Rating Sys. LLC v. Costco Wholesale Corp.*, No. 4:21-CV-149-ALM, 2022 WL 1308036, at *4 (E.D. Tex. Apr. 28, 2022); *see also* 35 U.S.C. § 112. "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

American Tack contends that the claim is indefinite because the language is broader than the technology disclosed in the specification. But it is well-established that the scope of the patent is not limited to the examples provided in the specification. *Comark Commc'ns, Inc.,* 156 F.3d at 1187.

And to the extent that American Tack is arguing that "prong" is indefinite because it is too broad, a claim is not indefinite simply because it is broad. *See, e.g., BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1367 (Fed. Cir. 2017). Thus, American Tack has not explained how a person of ordinary skill in the art would not be able to determine with reasonable certainty what "prong" means.

Lastly, American Tack argues that SnapPower's proposed construction of "prong"[5] is "precluded under the disclosure dedication doctrine." Doc. 50, Resp., 15. The disclosure-dedication rule prohibits a patentee from expanding the scope of the patent beyond the language of the claims to cover subject matter that is only disclosed in the specification. *See Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1331 (Fed. Cir. 2004). For example, the Federal Circuit applied this rule when a patent's specification described an embodiment that was not covered by the claim language. *See Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1055 (Fed. Cir. 2002). There, the patent's claim only disclosed an invention that used "a sheet of aluminum" or "the aluminum sheet." *Id.* The specification, however, provided that "other metals, such as stainless steel or nickel alloys may be used." *Id.* The Federal Circuit held that the patent did not cover inventions that used a sheet of stainless steel because such an invention was not disclosed in the claim language. *Id.*

Here, American Tack incorrectly applies the disclosure-dedication rule. American Tack is not trying to prevent SnapPower from broadening the claim language to cover subject matter that was only disclosed in the specification. Instead, American Tack is trying to narrow "prong" based on an embodiment that SnapPower did not disclose in the specification. *See* Doc. 50, Resp., 14. Specifically, American Tack argues that the prong cannot include a device with an insulating wall

---

[5] It is not entirely clear from its brief, but American Tack may also think that this argument applies to other claim terms. If so, American Tack failed to develop these arguments.

that is integral to the back plate because none of the embodiments include such a configuration. *Id.* at 14–15. In other words, it argues that "prong" must have a narrower construction than its plain, ordinary meaning because of something that is *not disclosed* in the specification. But the disclosure-dedication rule provides that the scope of a claim cannot be expanded to cover something that *is disclosed* in the specification. Thus, the Court rejects American Tack's argument. Accordingly, the Court gives "prong" its plain and ordinary meaning: a projecting part.

2. Prong Connecting to The Back Surface of The Front Plate

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., joined or attached to the back surface of a front plate. Doc. 43, Jt. Chart, 23.

- American Tack's proposed construction: A prong in contact with and secured to the face plate. *Id.*

The Court will adopt SnapPower's proposed construction: plain, ordinary meaning, i.e., joined or attached to the back surface of a front plate. The claim language and specification do not establish that the prong must contact the front plate or be secured to the front plate.

American Tack's proposed construction again tries to improperly take one embodiment's limitation and impose it on the entire claim. Figure 2D provides that "[t]he prongs *may* be secured to the front plate in a variety of ways." Doc. 14, '945 Patent, 4:53–54 (emphasis added). But an embodiment described in the specification generally cannot be used to narrow the scope of a claim. *See Aventis Pharms. Inc.*, 715 F.3d at 1373. Regardless, Figure 2D uses permissive language, which means that even if the Court were to read the "secured" limitation into the claim term, the prong would still not need to be secured to the front plate.

Furthermore, the fact that the prong is connected to a plate does not necessarily mean that the prong is contacting the plate. "Connect" and "contact" are different words with different meanings. *Compare Connect*, MERRIAM-WEBSTER'S DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/connect (defining "connect" as "to become joined" and "to join or fasten together usually by something intervening") *with Contact*, MERRIAM-WEBSTER'S DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/contact (defining contact as the "union or junction *of surfaces*" (emphasis added)). Thus, if a prong was touching the back surface of the front plate, it would be *contacting* the front plate, but the prong would not necessarily be *connected* to the front plate if they were not fastened together. Similarly, when someone charges their phone, the phone is *connected* to the outlet by the charger, but the phone is not necessarily *contacting* the outlet.

While Figures 2J and 2K disclose a prong that is in contact with the face plate, Doc. 1-4, '945 Patent, 8, a preferred embodiment disclosed in the specification generally cannot be used to narrow the scope of the claims. *See Aventis Pharms. Inc.*, 715 F.3d at 1373. Thus, these two figures cannot be used to establish that a prong must contact the front plate for it to be connected to the back surface of the front plate. Therefore, the Court rejects this proposed limitation.

American Tack also argues that this term is indefinite for the same reason that it argues "prong" is indefinite. Doc. 50, Resp., 23. The Court rejects this argument for the same reasons it rejected it above. Accordingly, the Court gives this term its plain and ordinary meaning.

3.  Upright

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., something that stands erect or in a vertical position. Doc. 43, Jt. Chart, 23.

-13-

- American Tack's proposed construction: A flexible portion of the prong that supports the prong.[6] *Id.*

The Court adopts the following construction of "upright": something that stands erect or in a vertical position. While upright is a relatively common word, some construction is needed here because the patents use "upright" as a noun instead of as an adjective. Claim 1 of the '945 Patent provides that the prong includes "an upright extending rearward away from the back surface of the front plate in the transverse direction." Doc. 1-4, '945 Patent, 6–7. So the upright is a component of the prong (which is a projecting part), and the upright extends away from the front plate. Thus, the claim language strongly supports SnapPower's proposed construction.

American Tack's proposed construction—that the upright is flexible—again excludes at least some preferred embodiments disclosed in the patent. The embodiment provided in Figure 10F displays an "upright [that] may *or may not* be flexible." Doc. 1-4, '945 Patent, 14:9–12 (emphasis added). Thus, the Court rejects this limitation. *See Rexnord Corp.*, 274 F.3d at 1342.

And the Court also finds that American Tack's "supports the prong" limitation would unduly narrow the term. While several of the preferred embodiments disclose an upright that also provides structural support, not every embodiment indicates that the upright provides structural support to the prong. While one of the embodiments says that the upright "is configured to support the prong," Doc. 1-4, '945 Patent, 5:59, another embodiment simply says that the upright provides structural support but does not specify whether it provides structural support to the prong or to

---

[6] Interestingly, American Tack argues that "upright" is a means-plus-function limitation in the '773 patent and the '788 patent but not in the '945 patent. It is not clear why "upright" would have a different meaning across the different patents because the asserted patents use the disputed terms identically, but the Court will address that argument when discussing the '773 and '788 Patent.

another part of the cover plate. *Id.* at 7:50–53. Accordingly, the Court rejects this limitation and adopts the plain, ordinary meaning proposed by SnapPower.

> 4.    <u>Resilient Contact</u>

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., a contact that bends under a force and recovers its original position when the force is removed. Doc. 43, Jt. Chart, 24.

- American Tack's proposed construction: A flexible contact that returns to its original shape after being deformed. *Id.*

The Court adopts the following construction: a contact capable of springing back into a predetermined shape after being bent or compressed. The parties' proposed constructions have two major differences. First, American Tack proposes that a resilient contact must be flexible. Second, American Tack argues that "resilient" refers to the contact's shape, while SnapPower argues that "resilient" refers to the contact's position. After reviewing the claim language and the specification, the Court concludes that the resilient contact does not need to be flexible, but its shape must be resilient.

Claim 1 of the '945 Patent says that the resilient contact has a "bow shape" and that it has "a first end, second end, and middle portion." Doc. 1-4, '945 Patent, 16:11–12. When the middle part of the resilient contact moves, the bow shape is "at least partially flatten[ed]." Doc. 1-4, '945 Patent, 16:11–15. Because the Patent describes the shape of the resilient contact and explains how the shape changes when it experiences a force, the Court concludes that the "resilient" aspect refers to the contact's shape.

The claim language does not establish that the resilient contact changes its position when it experiences a force. Instead, when the bow shape is flattened, only the resilient contact's middle portion and second end move—the first end of the resilient contact does not move. *See id.* at 16:16–18. Thus, the claim language establishes that the resilient contact changes its shape—not its position—because the first end does not move.

Additionally, another court within this District construed terms similar to the terms disputed here. *See generally O'Reilly Winship, LLC v. Snaprays, LLC*, No. 3:21-CV-2719-N, 2023 WL 1822403 (N.D. Tex. Feb. 7, 2023) (Godbey, C.J.). There, Chief Judge Godbey construed "resilient strip" to mean "a strip capable of springing back into a predetermined shape after being bent or compressed." *Id.* at *6. The Court finds this construction persuasive and will apply it to "resilient contact."

The Court next rejects American Tack's argument that a resilient contact must also be flexible. This limitation is again not supported by the claim language or the specification.

Accordingly, the Court construes "resilient contact" to mean a contact capable of springing back into a predetermined shape after being bent or compressed.

5.  Bow Shape

*   SnapPower's proposed construction: Plain, ordinary meaning, e.g., having a shape bent, curved, or arched. Doc. 43, Jt. Chart, 25.

*   American Tack's proposed construction: Arcuate. *Id.* Alternatively, the term is indefinite. *Id.*

The Court will adopt SnapPower's proposed construction: having a shape bent, curved, or arched. The Court can use a general-purpose dictionary to construct the meaning of "bow shaped" because it has a plain and ordinary meaning. *See Phillips*, 415 F.3d at 1314. The Court agrees with

SnapPower that the plain and ordinary meaning of "bow shaped" is something with a bend, curve, or an arch. *See Bow*, MERRIAM-WEBSTER'S DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/bow (defining a bow as "something bent into a simple curve or arc").

American Tack's proposed construction overcomplicates a simple term and would confuse the jury. *See Sol IP, LLC v. AT&T Mobility LLC*, No. 2:18-CV-00526-RWS-RSP, 2019 WL 6879403, at *12 (E.D. Tex. Dec. 17, 2019) (rejecting a party's proposed construction that would "confuse rather than clarify the scope of the claims"). And American Tack has entirely failed to explain how a person of ordinary skill in the art would not reasonably understand the meaning of bow shape as necessary for "bow shaped" to be indefinite. *See Nautilus, Inc.*, 572 U.S. at 901.

6.  The First End and The Second End Are Positioned Proximate to The Upright and The Middle Portion Bows Away from The Upright

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., near the upright and the middle portion is bent or curved away from the upright. Doc. 43, Jt. Chart, 26.

- American Tack's proposed construction: The first end and the second end are positioned near the upright and the middle portion follows an outwardly arcuate path between the first end and second. *Id.*

The Court will give this term its plain meaning. After reviewing the claim language and the specification, the Court is of the opinion that no further construction is necessary for this term. "[C]ourts 'are not (and should not be) required to construe every limitation present in a patent's asserted claims.'" *Promptu Sys. Corp. v. Comcast Corp.*, 92 F.4th 1372, 1380 (Fed. Cir. 2024) (quoting *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)) (emphasis omitted). Instead, courts only need to construe disputed terms when "necessary to resolve the controversy." *Id.* The Court concludes that no construction is necessary for this term because it has

a clear and obvious meaning. *See id.* The Court has already construed the terms "upright" and "bow shaped," so any further construction would be an exercise of redundancy. Additionally, American Tack's proposed construction is unnecessarily complicated. *See Sol IP, LLC*, 2019 WL 6879403, at *12. Therefore, the Court gives this term its plain, ordinary meaning.

### 7.  At Least Partially Flattens the Bow Shape

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., causes the bent, curved, or arched shape to be less bent, curved, or arched. Doc. 43, Jt. Chart, 26.

- American Tack's proposed construction: Reduces the curvature (straightens out). *Id.*

The Court does not see a meaningful distinction between the parties' proposed constructions. However, the Court adopts SnapPower's construction because it is more consistent with the Court's earlier definition of "bow shape."

### 8.  Fixed With Respect to the [First] Upright

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., attached, not readily movable. Doc. 43, Jt. Chart, 28.

- American Tack's proposed construction: Does not move with respect to the first upright. *Id.*

This claim term has a clear and obvious meaning, so no construction is needed. Additionally, American Tack's proposed construction would improperly narrow this claim term because "does not move" is stronger language than "fixed with respect to." Accordingly, the Court gives this term its plain meaning.

9. <u>A Front Element Covering at Least a Portion of the Inboard Side of the Upright</u>

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., overlaying a portion of a side of the upright toward the center axis of the cover plate. Doc. 43, Jt. Chart, 28.

- American Tack's proposed construction: Means-plus-function. *Id.*

The Court gives this term its plain, ordinary meaning. The parties dispute whether this claim term recites structure or whether it is a means-plus-function limitation governed by 35 U.S.C. § 112 ¶ 6. "A means-plus-function limitation recites a function to be performed rather than definite structure or materials for performing that function." *Lockheed Martin Corp. v. Space Sys./Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). But "the mere fact that the disputed limitations incorporate functional language does not automatically convert the words into means for performing such functions." *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018). If a term describes a means-plus-function limitation, the term "must be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." *Id.*; *see also* 35 U.S.C. § 112 ¶ 6.

"[T]he failure to use the word means . . . creates a rebuttable presumption" that a claim term is not a means-plus-function limitation. *Williamson v. Citrix Online LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (citations and internal quotation marks omitted). However, this presumption can be rebutted "if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* at 1348 (citations and internal quotation marks omitted).

When determining whether § 112 ¶ 6 applies, "[t]he essential inquiry is not merely the presence or absence of the word 'means' but whether the words of the claim are understood by

persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *MTD Prods. Inc. v. Iancu*, 933 F.3d 1336, 1341 (Fed. Cir. 2019) (citation omitted). The Federal Circuit has instructed courts to look for "nonce words," which are generic terms that effectively serve as a placeholder for the word "means." *Id.* A nonce word is a verbal construct that lacks sufficiently definite structure which results in the claim only disclosing a function. *See id.* Some common examples of nonce terms include "module," "mechanism," "element," and "device." *Id.*

Here, the disputed claim term is "front element covering at least a portion of the inboard side of the upright." The claim term includes the word "element," which the Federal Circuit has described as a common nonce word. *See id.* And the claim term appears at first glance to describe a functional purpose: covering part of the upright. However, the Court must look at how the claim term is used in the context of the overall patent. "Front element" is not simply used as a generic term to describe a function. Instead, the front element is a component of the prong, and the claim is describing how the front element fits into the prong's overall structure. Doc. 1-4, '945 Patent, 16:24–25. The '945 Patent discloses a prong. That prong has a front element that covers another part of the prong: the inboard side of the upright. Therefore, this claim term recites sufficiently definite structure and is not governed by § 112 ¶ 6.

Accordingly, the Court gives this term its plain meaning because no further construction is necessary.

B.    *The '773 Patent*

The parties dispute the meaning of 13 claim terms in the '773 Patent. However, the Court construed the meaning of several of these terms above. The Court will not unnecessarily repeat its analysis.

1.  <u>Prong</u>

The Court construed the meaning of this term when discussing the '945 Patent. The parties agree that prong has the same meaning in all five asserted patents. Accordingly, "prong" means a projecting part.

2.  <u>Electrically Connected</u>

• SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 35.

• American Tack's proposed construction: Connected so as to permit the flow of electricity from one component to another. *Id.*

After reviewing the claim language, the specification, and the parties' arguments, the Court concludes that no claim construction is necessary for this term. *See Promptu Sys. Corp.*, 92 F.4th at 1380. "Electrically connected" has a clear and obvious meaning, and American Tack's construction unnecessarily complicates this simple claim term. Accordingly, the Court gives this term its plain meaning.

3.  <u>A Prong Connecting to the Back Surface of the Front Plate</u>

The Court construed the meaning of this term when discussing the '945 Patent. Accordingly, the Court gives this term its plain, ordinary meaning, i.e., joined or attached to the back surface of a front plate.

4.  <u>A Conductive Upright Extending Rearward Away from The Back Surface of The Front Plate in The Transverse Direction</u>

• SnapPower's proposed construction: plain, ordinary meaning, e.g., a conductive structure upright in the transverse direction extending from the back surface. Doc. 43, Jt. Chart, 37.

- American Tack's proposed construction[7]: means plus function. *Id.*

This term is not a means-plus-function limitation because it recites sufficiently definite structure. As a preliminary matter, American Tack did not argue that a nearly identical term from Claim 1 of the '945 Patent was governed by § 112 ¶ 6: "an upright extending rearward away from the back surface of the front plate in the transverse direction." Doc. 1-4, '945 Patent, 16:6–7. The only difference between the claim terms is that this term specifies that the upright is conductive. American Tack has entirely failed to explain why adding the word "conductive" changes whether this term is governed by § 112 ¶ 6.

In *Diebold Nixdorf, Inc. v. International Trade Commission*, the Federal Circuit held that a claim term used in a patent disclosing an ATM machine was a means-plus-function limitation. 899 F.3d 1291, 1300 (Fed. Cir. 2018). There, the disputed claim term provided that the "cheque standby unit" was "configured to hold the at least one authentic cheque to return the at least one authentic cheque to the user responsive to receiving user instructions cancelling depositing of the at least one authentic cheque." *Id.* at 1298. But nothing in the claims or specification indicated what the structure of the "cheque standby unit" would be. *Id.* Instead, the claim only said that the "cheque standby unit" would perform a specific function: holding and subsequently returning a cheque. *Id.* Therefore, the Federal Circuit concluded that this claim was governed by § 112 ¶ 6.

Here, this disputed claim term is not a means-plus-function limitation. Because the claim term does not use "means for," there is a rebuttable presumption that § 112 ¶ 6 does not apply. *See Williamson*, 792 F.3d at 1348. American Tack fails to rebut this presumption. The claim term does

---

[7] American Tack includes an alternative definition of this term: A flexible, conductive portion of the prong that supports the prong. Doc. 33, Jt. Chart, 38. The Court rejected this definition of upright when discussing the '945 Patent and will not repeat its analysis here.

not recite a function or include a nonce word that effectively substitutes for "means." And unlike the claim term in *Diebold Nixdorf*, the word "conductive" simply describes a characteristic of the upright—it is not merely saying that something generic, like a cheque standby unit, conducts electricity to another part of the cover plate. 899 F.3d at 1298.

American Tack argues that "upright" is a nonce word because the claim only "recites functional language: the upright extends away from the back plate and conducts electricity." Doc. 50, Resp., 30. This argument lacks merit. As a preliminary matter, American Tack is incorrect that the upright extends away from the back plate—it actually extends away from the back of the front plate. Doc. 1-5, '773 Patent, 16:5–7. Regardless, this claim term does not describe any specific function—instead, it describes the structure of the upright itself. The upright has a base on the front plate that then extends away from the front plate on the transverse axis. This language establishes that the upright is a structure. *See Phillips*, 415 F.3d at 1311 ("The claim characterizes the baffles as extend[ing] inwardly from the steel shell walls, which plainly implies that the baffles are structures."). Because the disputed claim term itself refers to structure and does not contain functional language, the Court finds that this claim term is not subject to § 112 ¶ 6.

The Court interpreted "upright" above as something that stands erect or in a vertical position. No further claim construction is necessary for this term. Accordingly, the Court gives this term its plain meaning.

5. <u>The Prong Comprising an Electrically Insulative Material Positioned Inboard of And Overlaying At Least a Portion of The Conductive Upright</u>

- SnapPower's proposed construction: plain, ordinary meaning, e.g., nonconductive material overlaying a portion of the upright toward the center axis of the cover plate. Doc. 43, Jt. Chart, 38.

- American Tack's proposed construction: means-plus-function. Alternatively, a non-conductive material integrally forming part of the unitary structure of the prong that covers a portion of the conductive upright. *Id.*

The Court adopts SnapPower's proposed construction because this term is not a means-plus-function limitation. American Tack entirely fails to explain why this term is subject to § 112 ¶ 6. *See generally* Doc. 50, Resp. This claim term is found in Claim 1 of the '773 Patent and is one of many terms describing the prong. The prong includes a conductive upright, an electrically insulative material with an opening, and a resilient contact that passes through the opening in the insulative material. Doc. 1-5, '773 Patent, 16:4–18. These terms, when read together, recite a sufficiently definite structure.

The Court also rejects American Tack's alternative definition because it seeks to impose "unitary" and "integral" limitations that are not supported by the claim language or the specification, as discussed above. Accordingly, the Court adopts SnapPower's proposed construction: the plain, ordinary meaning, i.e., a nonconductive material overlaying a portion of the upright toward the center axis of the cover plate.

6.  <u>The Material Having a Contact Aperture Extending in The Lateral Direction Therethrough</u>

- SnapPower's proposed construction: plain, ordinary meaning, e.g., an opening through the material, in the lateral direction. Doc. 43, Jt. Chart, 38–39.

- American Tack's proposed construction: an opening through the insulative material extending in the lateral direction that facilitates contact with a screw terminal. *Id.*

The Court adopts SnapPower's proposed construction: an opening through the material in the lateral direction. The parties appear to agree that a "contact aperture" is an opening. *See id.* Such

a construction is consistent with the claim language because the resilient contact is connected to the conductive upright and then "bow[s] out through the contact aperture." Doc. 1-5, '773 Patent, 16:14–18. Because something must pass through the contact aperture, its plain and ordinary meaning is an opening. Further, the commonly understood meaning of "aperture" is an opening. *Aperture*, MERRIAM-WEBSTER'S DICTIONARY (online ed.), https://www.merriam-webster.com/dictionary/aperture (defining an aperture as "an opening or open space").

       The Court need not add "insulative" to the construction of this term because doing so would be redundant. The '773 Patent discloses a prong that has an "electrically insulative material." Doc. 1-5, '773 Patent, 16:8–10. In the very next line, the patent claim says, "*the material* having a contact aperture." *Id.* at 16:11 (emphasis added). A person of ordinary skill in the art would understand that "the material" is referring to the insulative material described in the sentence immediately preceding this claim term. Thus, adding "insulative" is unnecessary.

       And the Court will not add the "facilitates contact with a screw terminal" limitation because it is not in the claim language and is not supported by the specification. While the patent discloses cover plates "with prongs configured to contact side screw terminals," Doc. 1-5, '733 Patent, 1, American Tack has failed to explain why the Court should add this limitation to this specific claim term. Accordingly, the Court adopts SnapPower's proposed construction.

    7.  Resilient Contact

       The Court adopted a construction of this term when discussing the '945 Patent above and will not repeat its analysis here. The Court adopts the following construction: a contact capable of springing back into a predetermined shape after being bent or compressed.

8.  Bowing Out Through the Contact Aperture

- SnapPower's proposed construction: plain, ordinary meaning, e.g., bending, curving, or arching through an opening. Doc. 43, Jt. Chart, 40.

- American Tack's proposed construction: extends outward along an arcuate path. *Id.*

The Court has already construed the terms "bow" and "contact aperture," so any further construction of this claim term is unnecessary. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain and ordinary meaning.

9.  Arches

- SnapPower's proposed construction: plain, ordinary meaning, e.g., curves or bends. Doc. 43, Jt. Chart, 41.

- American Tack's proposed construction: extends outward along an arcuate path. *Id.*

The Court concludes that no construction of this term is necessary because "arches" has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain meaning.

10. Metal Clip

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 42.

- American Tack's proposed construction: a metal component forming part of the unitary structure of the prong. *Id.*

The Court agrees with SnapPower that "[n]o construction of these plain words is needed." Doc. 47, Claim Br., 22. "Metal clip" has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Further, American Tack's proposed construction again asserts its argument that a prong must be unitary. The Court has already rejected that argument because nothing in the claim

language or specification establishes that a prong must be unitary. Accordingly, the Court gives this term its plain and ordinary meaning.

11. <u>The Resilient Contact Extending to at Least Partially Cover the Opening in the Conductive Upright in the Lateral Direction</u>

- SnapPower's proposed construction: plain, ordinary meaning, e.g., an opening in the upright in the lateral direction. Doc. 43, Jt. Chart, 43.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court concludes that no construction is necessary for this term and that it is not governed by § 112 ¶ 6 because it recites sufficiently definite structure. The Court ruled above that similar terms were not means-plus-function limitations. One such term was "a conductive upright extending rearward away from the back surface of the front plate in the transverse direction." The claim term at issue here describes a resilient contact extending in the lateral direction while the earlier claim term described a conductive upright extending in the transverse direction. Another claim term the Court concluded was not a means-plus-function limitation was "the prong comprising an electrically insulative material positioned inboard of and overlaying at least a portion of the conductive upright." And this claim term has the resilient contact covering the aperture in the conductive upright, while the previous term disclosed an electrically insulative material that covered part of the conductive upright.

Thus, there is no meaningful distinction between this claim term and the two previous claim terms with respect to whether they describe a means-plus-function limitation. The Court determined that the previous claim terms recited sufficiently definite structure and were thus not governed by § 112 ¶ 6. For the same reasons, this claim term is not governed by § 112 ¶ 6. Accordingly, no claim

construction is necessary for this term because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain and ordinary meaning.

> ### 12. At Least One Prong Extending Away from The Back Surface of The Front Plate

- SnapPower's proposed construction: Plain, ordinary meaning. Doc. 43, Jt. Chart, 43.

- American Tack's proposed construction: A prong contacting the face plate and extending rearwardly from there. *Id.*

The Court construed the meaning of a similar term when discussing the '773 Patent. The Court again rejects American Tack's argument that the prong must be contacting the face plate. Accordingly, the Court gives this term its plain and ordinary meaning.

> ### 13. At Least One Prong Comprising a Front Insulator That Covers At Least a Portion of The Inward Side of The Conductive Upright, And A Back Insulator That Covers At Least a Portion of an Outward Side of The Conductive Upright.

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 44.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court agrees with SnapPower that no construction of this term is necessary. The Court has already rejected American Tack's argument that other claim terms with similar "covers at least a portion" language are means-plus-function limitations and reaches the same conclusion here. Thus, this term recites sufficiently definite structure, and the Court gives it its plain meaning.

C.    *The '788 Patent*

The parties dispute the meaning of 19 claim terms in the '788 Patent. However, the Court construed the meaning of several of these terms above. The Court will not unnecessarily repeat its analysis.

### 1.  Prong

The Court construed the meaning of this term above. The parties agree that prong has the same meaning in all five asserted patents. Accordingly, the Court adopts the following construction: a projecting part.

### 2.  Prong Extending from a Back of The Face Plate

The Court construed the meaning of this term when discussing the '773 Patent. The parties agree that prong has the same meaning in all five asserted patents. Accordingly, the Court gives this term its plain and ordinary meaning.

### 3.  Upright

The Court adopted a construction of this term above and will not repeat its analysis here. The Court adopts the following construction: something that stands erect or in a vertical position.

### 4.  Inboard

- SnapPower's proposed construction: plain, ordinary meaning, e.g., toward the inside. Doc. 43, Jt. Chart, 50.

- American Tack's proposed construction: inward. *Id.*

The Court concludes that no construction of this term is necessary because "inboard" has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. American Tack's proposed construction does not add any additional meaning, and it has failed to explain why the Court should impose this construction. Accordingly, the Court gives this term its plain and ordinary meaning.

5.   Resilient Contact

The Court adopted a construction of this term above and will not repeat its analysis here. The Court adopts the following construction: a contact capable of springing back into a predetermined shape after being bent or compressed.

6.   At Least A Portion of The Resilient Contact Extends Over The At Least One Aperture in The Upright

The parties agree that this term should be given its plain, ordinary meaning. Doc. 43, Jt. Chart, 51. Accordingly, the Court gives this term its plain meaning.

7.   A Resilient Contact Comprising a Fixed End and a Free End

- SnapPower's proposed construction: plain, ordinary meaning, e.g., attached (or immovable) end and unattached (or movable) end. Doc. 43, Jt. Chart, 52.

- American Tack's proposed construction: one end (i.e., fixed end) of the contact that is connected to the upright and another end (i.e., free end) of the contact that is free to move with respect to the upright. *Id.*

The Court adopts SnapPower's proposed construction and gives this term its plain, ordinary meaning, which here means a resilient contact comprising an attached (or immovable) end and an unattached (or movable) end. American Tack's proposed construction would be an exercise of redundancy because claim 1 of the '788 Patent explains that "the fixed end of the resilient contact is secured to the upright." Doc. 1-6, '788 Patent, 28:19–20. Because another part of the claim language imposes this requirement, adding that limitation to this disputed term is unnecessary. Therefore, the Court adopts the plain and ordinary meaning for this disputed term.

8.  <u>Wherein The Fixed End of The Resilient Contact Is Secured to The Upright.</u>

- SnapPower's proposed construction: plain, ordinary meaning, e.g., the attached (or immovable end) of the resilient contact is attached to the upright. Doc. 43, Jt. Chart, 52.

- American Tack's proposed construction: the fixed end of the resilient contact is connected to the upright. *Id.*

The Court concludes that no further construction of this term is necessary because it has already constructed "fixed end," "resilient contact," and "upright." Any further construction is unnecessary in light of these earlier constructions. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain and ordinary meaning.

9.  <u>Wherein The First End of The First Resilient Contact Is Fixed to The First Upright of The First Prong.</u>

- SnapPower's proposed construction: Plain, ordinary meaning, e.g., the attached (or immovable) end of the resilient contact is attached to the upright. Doc. 43, Jt. Chart, 52.

- American Tack's proposed construction: The fixed end of the resilient contact is connected to the upright. Alternatively, the term is indefinite. *Id.*

The Court concludes that no further construction of this claim term is necessary for the same reasons that the previous claim term needed no further construction. Any further construction is unnecessary because this claim term has a plain and obvious meaning in light of the Court's earlier constructions. *See Promptu Sys. Corp.*, 92 F.4th at 1380. And American Tack has entirely failed to explain why this term is indefinite. Accordingly, the Court gives this term its plain meaning.

10. <u>A Portion of The Electrical Insulation Extends Through The At Least One Additional Aperture in The Upright.</u>

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 54.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court concludes that no construction of this term is necessary and that it is not a means-plus-function limitation. The '788 Patent uses "portion of the electrical insulation" to refer to part of the cover plate. Thus, the electrical insulation on the cover plate includes a part that extends through an opening in the upright. Therefore, this phrase recites sufficiently definite structure and is not governed by § 112 ¶ 6. Accordingly, the Court gives this term its plain and ordinary meaning.

11. Engage

- SnapPower's proposed construction: plain, ordinary meaning, e.g., hold, mesh, interlock or insert into. Doc. 43, Jt. Chart, 55.

- American Tack's proposed construction: to interlock or contact. *Id.*

The Court adopts SnapPower's proposed construction because American Tack's appears overly broad. Claim 8 of the '788 Patent provides that "the edges engage with the electrical insulation to at least partially secure the upright to the electrical insulation." Doc.1-6, '788 Patent, 28:52–53.

Both parties agree that interlock would be an example of engaging. *See id.* However, American Tack also suggests that "engage" means to contact. That definition is too broad because it would encompass any time the edges touch the electrical insulation, while the claim language suggests that the edges must do more than simply touch the electrical insulation to secure the upright to the insulation. Thus, American Tack's broad construction is not supported by other claim language or the specification. Further, American Tack offers no argument in support of this definition in its claim construction brief. *See generally* Doc. 50, Def.'s Br. Accordingly, the Court rejects it and adopts SnapPower's proposed plain, ordinary meaning of "engage," which here is to hold, mesh, interlock, or insert into.

12. Insulative Back Element

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 58.

- American Tack's proposed construction: means-plus-function. *Id.* Alternatively, a non-conductive material integrally forming part of the unitary structure of the prong that covers a portion of the outboard side of the conductive upright. *Id.*

The Court finds that no further construction is necessary for this term. After reading the entirety of the claim language, the Court concludes that "insulative back element" is not a means-plus-function limitation because it recites a sufficiently definite structure. As the Court discussed above, "element" is often used as a nonce word to describe an invention's function instead of an invention's structure. *See MTD Prods. Inc.*, 933 F.3d at 1341. However, "insulative back element" is given a sufficiently definite structure in the '788 Patent. Claim 12 of the '788 Patent describes the insulative back element's structure and physical design as "compris[ing] an outboard wall and lateral walls joined to opposite edges of the outboard wall." Doc. 1-6, '788 Patent, 29:21–24. Further, the insulative back element is part of the cover plate described in Claim 12. Thus, this claim is not governed by § 112 ¶ 6.

Additionally, the Court rejects American Tack's alternative construction because it includes the phrase "the unitary structure of the prong," which is a limitation that the Court has already rejected. Accordingly, the Court gives this term its plain and ordinary meaning because no further construction is necessary for this term.

13. Insulative Back Element Extending Away from the Back Surface

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 58.

- American Tack's proposed construction: means-plus-function. Alternatively, a non-conductive material integrally forming part of the unitary structure of the prong that covers a portion of the outboard side of the conductive upright. *Id.*

The Court concludes that no construction is necessary for this claim term for the same reasons it concluded no construction was necessary for "insulative back element." Accordingly, the Court gives this term its plain and ordinary meaning.

### 14. Cantilever Spring

- SnapPower's proposed construction: plain, ordinary meaning, e.g., projecting structure supported at one end that resists a deflecting force and, when released, will recover its basic form or position. Doc. 43, Jt. Chart, 59.

- American Tack's proposed construction: plain and ordinary meaning. *Id.*

Both parties agree that "cantilever spring" should be given its plain and ordinary meaning—but they disagree as to what the plain and ordinary meaning is. Claim 12 of the '788 Patent describes a prong that includes "a cantilever spring having two ends, a fixed end and a free end extending inboard of the fixed end." Doc. 1-6, '788 Patent, 29:17–19. Because Claim 12 explains that the cantilever spring has one fixed end and one free end, the Court is of the opinion that no further construction of this term is necessary. The only distinction between SnapPower's proposed construction and the ordinary meaning of a spring is that the cantilever spring is "supported at one end." Because the claim language explains that the cantilever spring has this limitation, adopting SnapPower's proposed construction would be an exercise of redundancy. Accordingly, no further construction is necessary, and the Court gives this term its plain and ordinary meaning.

15. <u>Insulative Back Element Comprises an Outboard Wall and Lateral Walls Joined to Opposite Edges of The Outboard Wall</u>

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 59.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court concludes that no construction is necessary for this claim term for the same reasons that it concluded no construction was necessary for "insulative back element." Accordingly, the Court gives this term its plain and ordinary meaning.

16. <u>A Prong Connecting to the Back Surface of the Face Plate</u>

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 60.

- American Tack's proposed construction: a prong in contact with and attached to the back surface of the front plate. *Id.*

The Court construed a nearly identical term above: "prong connecting to the back surface of the front plate." The Court gave that term its plain, ordinary meaning, which is joined or attached to the back surface of a front plate. The only difference here is that the prong is connected to the back surface of the face plate instead of the back surface of the front plate. Because these terms are functionally the same, the Court gives this term its plain, ordinary meaning, i.e., joined or attached to the back surface of a face plate.

17. <u>Spring Pressure</u>

- SnapPower's proposed construction: no construction is necessary. Doc. 43, Jt. Chart, 63.

- American Tack's proposed construction: the force applied by a spring. *Id.*

The Court concludes that no construction is necessary for this term because "spring pressure," as it is used in the '788 Patent, has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Claim 18 of the '788 Patent discloses a prong with a cantilever spring that

"provide[s] spring pressure to the contact in an inboard direction." Doc. Doc. 1-6, '788 Patent, 29:50–51. When used in this context, "spring pressure" has an obvious meaning and needs no further construction. Further, adopting American Tack's proposed construction would result in Claim 18 of the '788 Patent disclosing a cantilever spring that "provide[s] the force applied by a spring to the contact in an inboard direction." This additional construction is an exercise in redundancy. Accordingly, the Court rejects American Tack's argument and gives this term its plain and ordinary meaning.

18. <u>The Cantilever Spring Is Configured to Provide Spring Pressure to The Contact in An Inboard Direction When the Cantilever Spring Is Deflected in An Outboard Direction.</u>

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 63–64.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court adopts this term's plain and ordinary meaning. This disputed claim term is used in Claim 18 of the '788 Patent. Claim 18 of the '788 Patent discloses the cover plate from Claim 12, which includes a prong with a cantilever spring. Doc. 1-6, '788 Patent, 29:13–19.

This claim term is not a means-plus-function limitation for three reasons. First, because this claim term does not include the word "means," there is a rebuttable presumption that it is not a means-plus-function limitation. *See Williamson*, 792 F.3d at 1348. Second, American Tack has failed to identify any nonce words that could help it rebut this presumption. "Cantilever spring" is not a nonce word, and it has a plain and obvious meaning.

Third, "configured to provide spring pressure to the contact" is not functional language. Another court within this district addressed similar claim terms that also used "configured" and rejected the argument that they were governed by § 112 ¶ 6. *See Winship, LLC*, 2023 WL 1822403,

at *6. There, the Court reasoned that "the term 'configured' . . . refers to the physical design of the structure in relation to other structural elements," which meant the term recited sufficiently definite structure. *Id.* Therefore, the court concluded, the disputed claim terms were not governed by § 112 ¶ 6. The Court finds this reasoning persuasive. Here, "configured" likewise refers to how the prong is physically designed. The cantilever spring is structured in a manner that causes the cantilever spring to provide pressure to a specific point on the prong. Therefore, this claim recites sufficiently definite structure, so § 112 ¶ 6 does not apply.

After reviewing the claim language and specification, the Court concludes that no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain and ordinary meaning.

19. <u>Contact Between the Free End of the Cantilever Spring and Inner Wall of the Insulative Back Element Changes Bending Behavior of the Cantilever Spring</u>

- SnapPower's proposed construction: plain, ordinary meaning, e.g., contact between the unattached end of a cantilever spring and inner wall . . . alters the curving, flexing of the cantilever spring. Doc. 43, Jt. Chart, 64.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court concludes that this term is not a means-plus-function limitation for the same reasons the previous term was not a means-plus-function limitation. This claim term refers to the physical design of the prong because the prong's cantilever spring contacts the insulative back element, which causes changes the cantilever spring to change its bending behavior. Accordingly, the Court gives this term its plain and ordinary meaning because no further construction is necessary.

D.    *The '789 Patent*

The parties dispute the meaning of 15 claim terms in the '789 Patent. However, the Court constructed the meaning of several of these terms above. The Court will not repeat its analysis when it is unnecessary.

1.    Prong

The Court discussed the meaning of this term above. The parties agree that "prong" has the same meaning in all five asserted patents. Accordingly, the Court adopts the following construction: a projecting part.

2.    Prong Extending from a Back of The Face Plate

The Court discussed the meaning of this term above. Accordingly, the Court gives this term its plain and ordinary meaning.

3.    The Prong Comprises . . . (Rear/Front) Insulation / The Prong Comprises . . . An Insulating Element

- SnapPower's proposed construction: plain, ordinary meaning, e.g., a projecting part that includes a nonconductive element. Doc, 43 Jt. Chart, 72.

- American Tack's proposed construction: a non-conductive material forming part of the unitary structure of the prong. *Id.*

The Court adopts SnapPower's proposed construction because it is consistent with the Court's earlier constructions. The Court has already determined that "prong" means a projecting part and the Court previously determined that "insulative material" was a nonconductive material. The Court rejects American Tack's proposed construction because it includes the limitation that a prong has a unitary structure, which the Court has already rejected. Accordingly, this claim term means a projecting part that includes a nonconductive element.

4.  Extending [. . .] Through the Opening[/Aperture]

The parties agree that this term should be given its plain, ordinary meaning. Doc. 43, Jt. Chart, 72. Therefore, the Court adopts its plain, ordinary meaning.

5.  Inboard

The Court previously discussed the meaning of this term as it is used in the '788 Patent. The parties have not argued that "inboard" means something different in the '789 Patent. Accordingly, this term needs no further construction, and the Court gives it its plain, ordinary meaning.

6.  Rear Insulation Comprising at Least Three Sides Defining an Interior Space

- SnapPower's proposed construction: plain, ordinary meaning, e.g., the three sides at least partially surround an interior space. Doc. 43, Jt. Chart, 73.

- American Tack's proposed construction: means-plus function. *Id.*

The Court concludes that this term should be given its plain, ordinary meaning, which is: rear insulation with at least three sides that surround an interior space.

This claim term is not a means-plus-function limitation. Because this claim term does not include the word "means," there is a rebuttable presumption that it is not a means-plus-function limitation. *See Williamson*, 792 F.3d at 1348. American Tack has entirely failed to rebut this presumption. It has not identified any nonce words. While American Tack argues that "insulation" is a nonce word, it does not explain why. Doc. 50, Resp., 31–34. Insulation is not a nonce word here because it is not simply a generic term serving as a placeholder for "means." *See MTD Prods. Inc.*, 933 F.3d at 1341. Instead, the rear insulation is a structural component of the prong disclosed in Claim 1 of the '789 Patent. *See* Doc. 1-7, '789 Patent, 28:12–14. Additionally, the claim discusses the structure of the insulation itself: the insulation has at least three sides and these sides surround the

prong's interior space. *Id.* Accordingly, this claim term is not governed by § 112 ¶ 6, and the Court will give the term its plain, ordinary meaning.

7. Front Insulation Abutting the Rear Insulation

- SnapPower's proposed construction: plain, ordinary meaning, e.g., being next to, adjacent. Doc. 43, Jt. Chart, 74.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court rejects American Tack's argument that "front insulation" is a means-plus-function limitation for the same reasons that it rejected American Tack's argument that "rear insulation" was a means-plus-function limitation. Accordingly, the Court adopts SnapPower's proposed construction: the plain, ordinary meaning, i.e., being next to, adjacent.

8. Further Enclosing the Interior Space, Wherein the Rear Insulation and Front Insulation Define an Opening to the Interior Space

- SnapPower's proposed construction: plain, ordinary meaning, e.g., with reference to the interior space defined by the rear insulation. Doc. 43, Jt. Chart, 75.

- American Tack's proposed construction: means-plus-function. *Id.*

American Tack's only argument that this term is a means-plus-function limitation is its same argument that "rear insulation" and "front insulation" fail to recite sufficiently definite structure. *See* Doc. 50, Resp., 31–34. The Court rejected that argument above and concludes that no additional construction for this term is necessary. Accordingly, the Court gives this term its plain, ordinary meaning.

9. Electrical Contact

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 75.

- American Tack's proposed construction: means-plus-function. *Id.*

American Tack has entirely failed to explain why "electrical contact" is a means-plus-function limitation. No construction is necessary for "electrical contact" because this term has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain, ordinary meaning.

10. <u>An Insulating Element Comprising at Least Three Solid Sides and an at least Partially Open Side, Wherein the at Least Three Solid Sides Cover at Least a Portion of at Least Three Sides of the Upright.</u>

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 80.

- American Tack's Proposed Construction: means-plus-function. *Id.*

The Court concludes that no construction is necessary for this term, and it will be given its plain, ordinary meaning. While this term includes a nonce word—element—the rest of the claim language sufficiently recites structure. Here, the insulating element has at least three sides, one of the sides is partially open, and the three sides cover part of the upright. This language recites enough structure to not be governed by § 112 ¶ 6. *See Phillips*, 415 F.3d at 1311. Accordingly, the Court gives this term its plain, ordinary meaning because no further construction is necessary.

11. <u>Spring</u>

- SnapPower's proposed construction: plain, ordinary meaning, e.g., resists a deflecting force and, when released, will recover its basic form or position. Doc. 43, Jt. Chart, 81.

- American Tack's proposed construction: plain, ordinary meaning, e.g., an elastic or resilient element. *Id.*

The parties agree that "spring" should be given its plain, ordinary meaning. They just appear to disagree as to the plain, ordinary meaning of spring. After reviewing the claim language and the specification, the Court concludes SnapPower's proposed definition is more consistent with the

plain, ordinary meaning of "spring." Accordingly, the Court adopts this term's plain, ordinary meaning: resists a deflecting force and, when released, will recover its basic form or position.

### 12. Engage

The Court discussed the meaning of this term as it is used in the '788 Patent. The parties have not presented any reason that "engage" means something different in the '789 Patent. Accordingly, the Court adopts the plain, ordinary meaning, which is to hold, mesh, interlock, or insert into.

### 13. The Upright Engages with the Slot to Secure the Spring with Respect to the Insulation

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 83.

- American Tack's proposed construction: means-plus-function. *Id.*

It appears that American Tack only argues this claim term is governed by § 112 ¶ 6 because it uses the term "upright." Doc. 50, Resp., 29–30. The Court has already rejected this argument and will not repeat its analysis here. American Tack has not offered any other reason for why this term should be subject to § 112 ¶ 6, so the Court concludes that no further construction on this term is necessary. Accordingly, the Court gives this term its plain, ordinary meaning.

### 14. A Support at Least Partially Disposed in the Cavity

- SnapPowers's proposed construction: plain, ordinary meaning, e.g., a support at least partially positioned in the cavity. Doc. 43, Jt. Chart, 83.

- American Tack's proposed construction: means-plus-function. *Id.*

This claim is not a means-plus-function limitation because it recites sufficiently definite structure. The claim term uses the phrase "support," which implies that it is describing structure. *See Phillips*, 415 F.3d at 1311. Additionally, the support is a component of the prong disclosed in Claim

20 of the '789 Patent. Doc. 1-7, '789 Patent, 30: 5–6. Further, American Tack has entirely failed to explain why it believes this term is a means-plus-function limitation. Accordingly, the Court adopts SnapPower's proposed construction: plain, ordinary meaning, i.e., a support at least partially positioned in the cavity.

15. <u>A Portion of the Contact Extends from the Support Through an Opening in the Inboard Surface of the Insulation.</u>

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 84.

- American Tack's proposed construction: means-plus-function. *Id.*

This claim term also recites structure, so it is not a means-plus-function limitation. *See Phillips*, 415 F.3d at 1311. "Portion" refers to part of the contact disclosed in the claim language, and the claim does not recite functional language because it simply explains that the portion extends through an opening. Accordingly, the Court gives this term its plain and ordinary meaning.

E.     *The '045 Patent*

The parties dispute the meaning of ten claim terms in the '045 Patent. However, the Court constructed the meaning of several of these terms above. The Court will not unnecessarily repeat its analysis.

1. <u>Prong</u>

The Court discussed the meaning of this in the '945 Patent. The parties agree that prong has the same meaning in all five asserted patents. Accordingly, this term needs no further construction.

2. <u>Prong Extending Rearward from The Face Plate to a Free End</u>

The Court discussed the meaning of similar terms above. The parties agree that prong has the same meaning in all five asserted patents. Thus, no construction is necessary for this term because

it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain, ordinary meaning.

### 3.  A Free End

- SnapPower's proposed construction: plain, ordinary meaning, e.g., an unattached end. Doc. 43, Jt. Chart, 96.

- American Tack's proposed construction: an end of the prong that is free to move. *Id.*

The Court discussed the meaning of "free end" as it was used in the '788 Patent. The parties do not argue that "free end" is used differently in the '045 Patent. Accordingly, the Court adopts the same construction here: the plain and ordinary meaning, i.e., an unattached end.

### 4.  A Portion of the Free End of the Prong Configured to Contact a Wall After the Cover Plate is Installed.

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 96.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court adopts this term's plain, ordinary meaning. This claim term is not a means-plus-function limitation because it recites sufficiently definite structure. Because this claim term does not include the word "means," there is a rebuttable presumption that the means-plus-function does not apply. *See Williamson*, 792 F.3d at 1348. American Tack has failed to rebut this presumption because it did not identify any nonce words. "Portion" is not a nonce word here because it refers to part of the prong's free end that is disclosed in the claim language.

Additionally, "configured to contact a wall after the cover plate is installed" is not functional language. Instead, "configured" describes how the prong is physically designed because the free end is structured in a manner that results in the free end contacting a wall. Therefore, this claim recites sufficiently definite structure, so the means-plus-function limitation does not apply. After reviewing

the claim language and specification, the Court concludes that no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain meaning.

    5.  <u>Contact With the Wall by the Portion of the Free End of the Prong Increases Contact Pressure Between the Contact and the Screw Terminal</u>

- SnapPower's proposed construction: plain, ordinary meaning. Doc. 43, Jt. Chart, 98.

- American Tack's proposed construction: means-plus-function. *Id.*

This claim is not a means-plus-function limitation. Because this claim term does not include the word "means," there is a rebuttable presumption that the means-plus-function does not apply. *See Williamson*, 792 F.3d at 1348. American Tack has failed to rebut this presumption because it did not identify any nonce words. As the Court discussed above, "contact" is not a nonce word here because it refers to the structure of the cover plate. The free end of the prong contacts the wall. And when these two surfaces contact each other, the pressure between the contact and the screw terminal increases. Therefore, this claim recites sufficiently definite structure, so the means-plus-function limitation does not apply. After reviewing the claim language and specification, the Court concludes that no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain meaning.

    6.  <u>Wherein Contact Between the First Prong and the First Insulator Is Configured to Increase Contact Pressure Between the First Prong and the First Electrical Connector, and Wherein Contact Between the Second Prong and Second Insulator Is Configured to Increase Contact Pressure Between the Second Prong and the Second Electrical Connector</u>

- SnapPower's proposed construction: ordinary, plain meaning. Doc. 43, Jt. Chart, 101.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court has already rejected American Tack's arguments that other claims with similar language are means-plus-function limitations. The Court has said that "contact," "configured to," "increase contact pressure," and "insulation" are terms that recite sufficiently definite structure when used in other claims in the asserted patents. American Tack has not offered any argument for why these terms are used differently in the '045 Patent. Therefore, this claim term is not a means-plus-function limitation, and the Court concludes that no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain, ordinary meaning.

7. <u>Wherein the First Prong Contacts the First Insulator as the First Prong Deflects Outward, and Wherein the Second Prong Contacts the Second Insulator as The Second Prong Deflects Outward</u>

- SnapPower's proposed construction: ordinary, plain meaning. Doc. 43, Jt. Chart, 103.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court has already rejected American Tack's arguments that other claims with similar terms are means-plus-function limitations. The Court has said that "contact" and "insulation" are terms that recite sufficiently definite structure when used in other claims in the asserted patents. American Tack has not offered any argument for why these terms are used differently in the '045 Patent. Therefore, this claim term is not a means-plus-function limitation, and the Court concludes that no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain, ordinary meaning.

8.  Wherein Contact Between the First Prong and the First Insulator Is Configured to Limit Further Deflection of the First Prong, and Wherein Contact Between the Second Prong and the Second Insulator Is Configured to Limit Further Deflection of the Second Prong.

- SnapPower's proposed construction: ordinary, plain meaning. Doc. 43, Jt. Chart, 103–04.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court has already rejected American Tack's arguments that other claims with similar language are means-plus-function limitations. The Court has said that "contact," "insulation," and "configured to" are terms that recite sufficiently definite structure when used in other claims in the asserted patents. American Tack has not offered any argument for why these terms are used differently in the '045 Patent. Therefore, this claim term is not a means-plus-function limitation, and no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380.  Accordingly, the Court gives this term its plain meaning.

9.  Wherein the Prong Is Configured to Deflect Outward and Contact A Wall When the Cover Plate Is Installed

- SnapPower's proposed construction: ordinary, plain meaning. Doc. 43, Jt. Chart, 105.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court has already rejected American Tack's arguments that other claims with similar terms are means-plus-function limitations. The Court has said that "configured to" and "contact" are terms that recite sufficiently definite structure when used in other claims in the asserted patents. American Tack has not offered any argument for why these terms are used differently in the '045 Patent. Therefore, this claim term is not a means-plus-function limitation, and no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain, ordinary meaning.

10. Electrical Contact [ . . . Contact Between the Prong and the Wall is Configured to Increase Contact Pressure Between the Electrical Contact and the Screw Terminal]

- SnapPower's proposed construction: ordinary, plain meaning. Doc. 43, Jt. Chart, 106.

- American Tack's proposed construction: means-plus-function. *Id.*

The Court has already rejected American Tack's arguments that other claims with similar terms are means-plus-function limitations. The Court has said that "contact" and "configured to" are terms that recite sufficiently definite structure when used in other claims in the asserted patents. American Tack has not offered any argument for why these terms are used differently in the '045 Patent. Therefore, this claim term is not a means-plus-function limitation, and no further construction of this term is necessary because it has a plain and obvious meaning. *See Promptu Sys. Corp.*, 92 F.4th at 1380. Accordingly, the Court gives this term its plain, ordinary meaning.

## IV.

## CONCLUSION

The Court **ORDERS** that the disputed terms will be given the constructions discussed above. While the Court believes that it addressed every disputed claim term, due to the number of terms and the Court's previous Order reducing the number of asserted claims, it is possible that the Court did not resolve every dispute. If there are any additional disputed claim terms that the Court did not resolve in this Order, the parties may file a motion for clarification. However, the parties must include a Certificate of Conference in any motion for clarification. *See* N.D. TEX. CIV. R. 7.1(h).

SO ORDERED.

SIGNED: May 30, 2025.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE