**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| SNAPRAYS, LLC DBA SNAPPOWER, a Utah limited liability company,<br><br>Plaintiff,<br>v.<br><br>AMERICAN TACK & HARDWARE COMPANY INC.,<br><br>Defendant. | Case No. 3:24-cv-01228-B<br><br>Honorable Jane J. Boyle<br><br>[Filed Electronically] |
| AMERICAN TACK & HARDWARE COMPANY INC.,<br><br>Counter Claimant,<br>v.<br><br>SNAPRAYS, LLC DBA SNAPPOWER, a Utah limited liability company,<br><br>Counter Defendant. | |

**COVER LETTER STATEMENT**

Plaintiff SnapRays LLC d/b/a SnapPower hereby files this *Motion for Leave to Amend Infringement Contentions*. The issues argued in this motion are duplicative of SnapPower's opposing brief to American Tack & Hardware Co.'s *Motion to Strike Infringement Contentions* (ECF No. 94). The duplicative nature of the arguments arises because the analysis in determining whether to strike infringement contentions and whether to grant leave to amend infringement contentions is the same. *See Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. CIV.A. 6:07-CV-559, 2009 WL 81874, at *3 (E.D. Tex. Jan. 12, 2009).

**SNAPPOWER'S MOTION FOR LEAVE**
**TO AMEND INFRINGEMENT CONTENTIONS**

# TABLE OF CONTENTS

Page


I. BACKGROUND ..... 1

II. Legal Standard ..... 6

a. Good Cause ..... 7

b. The importance of what would be excluded by striking the contentions ..... 9

c. Prejudice ..... 10

III. ANALYSIS ..... 12

a. SnapPower Seeks to Amend to Expressly Include Accused Instrumentalities Not Known to SnapPower Prior to Filing Initial Infringement Contentions ..... 12

b. The Court Should Grant Leave to Amend Because Good Cause Exists, There Is No Unfair Prejudice to American Tack, and the Gen 3 Products are Important to Judicial Efficiency. ..... 12

1. Good cause exists because Gen 3 was developed during this litigation, disclosed to SnapPower after it filed its Preliminary Infringement Contentions, Is an "Accused Product" under the Preliminary Infringement Contentions, and American Tack identified no substantial difference in Gen 3 in any of its Interrogatory Responses. ..... 12

2. The importance of the information to the litigation weighs in favor of denying the Motion. ..... 15

3. The Final Infringement Contentions do not prejudice American Tack and this factor weighs in favor of denying the Motion. ..... 17

4. No continuance is needed given the Gen 3 product has been in the case all along and is nearly identical to the Gen 2 product charted in the Preliminary Infringement Contentions. ..... 22

IV. CONCLUSION ..... 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abiomed, Inc. v. Maquet Cardiovascular LLC*,
No. CV 16-10914-FDS, 2020 WL 3868803 (D. Mass. July 9, 2020) ............................ *passim*

*Bascom Glob. Internet Servs.*, No. 3:14-CV-3942-M ..................................................................11

*ClearPlay, Inc. v. DISH Network LLC*,
No. 2:14-cv-00191, 2019 WL 1318348, 2019 U.S. Dist. LEXIS 48417 (D. Utah Mar. 22, 2019) (unpublished)........................................................................11, 23

*CommScope Techs. LLC v. Dali Wireless, Inc.*,
No. 3:16-CV-0477-M, 2018 WL 4566130 (N.D. Tex. Sept. 21, 2018) ........................7, 10, 23

*Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*,
2009 WL 81874 (E.D. Tex. Jan. 12, 2009)...................................................................... *passim*

*Digital Reg of Texas, LLC v. Adobe Sys.*,
2014 U.S. Dist. LEXIS 58113, 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014)...........10, 17, 23

*H-W Tech., L.C. v. Apple, Inc.*,
No. 3:11-CV-651-G, 2012 WL 3650597 (N.D. Tex. Aug. 2, 2012*), report and recommendation adopted sub nom. H-W Tech., L.C. v. Amazon.com, Inc.*, No. 3:11-CV-0651-G BH, 2012 WL 3656293 (N.D. Tex. Aug. 27, 2012)...................................10

*Kruse Tech. P'ship v. Volkswagen AG*,
544 F. App'x 943 (Fed. Cir. 2013) (unpublished) .................................................................11

*LSP Prods. Grp., Inc. v. Oatey Co.*,
No. 3:19-CV-00642-M, 2020 WL 4923995 (N.D. Tex. Aug. 20, 2020)..................................8

*Mass Engineered Design v. Egrotron, Inc.*,
No. 2:06–cv–272, 2008 WL 1930299 (E.D.Tex. Apr.30, 2008) ........................................9, 13

*Nidec Corp. v. LG Innotek Co.*,
No. 6:07CV108-LED-JDL, 2009 WL 3673253 (E.D. Tex. Sept. 2, 2009) ..............................9

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
2012 WL 2427160 (N.D. Cal. June 26, 2012) ...................................................................8, 13

*O2 Micro, Int'l Ltd. v. Monolithic Power Sys., Inc.*,
467 F.3d 1355 (Fed.Cir.2006)..........................................................................................7, 9, 15

*Summit 6 LLC v. HTC Corp.*,
No. 7:14-CV-00014-O, 2013 WL 11514929 (N.D. Tex. Nov. 16, 2014) ............................8, 9

*TurboChef Techs., Inc. v. Garland Com Indus., LLC*,
No. 3-07-CV-1330-F, 2010 WL 11618098 (N.D. Tex. Mar 9, 2010)
..........................................................................................................9, 11, 13, 18

*Zest IP Holdings, LLC v. Implant Direct MFG, LLC*,
2013 U.S. Dist. LEXIS 53664, 2013 WL 1626111 (S.D. Cal. Apr. 15, 2013)...........10, 17, 23

**Other Authorities**

Rule 3-7(b) ...........................................................................................................12

Rule 30(b)(6)..........................................................................................................19, 22

**SNAPPOWER'S MOTION FOR LEAVE**
**TO AMEND INFRINGEMENT CONTENTIONS**

Plaintiff SnapRays, LLC d/b/a SnapPower ("SnapPower" or "Plaintiff") submits this *Motion Seeking Leave to Amend Infringement Contentions* as a corollary to its opposition brief (ECF No. 110) to Defendant American Tack & Hardware Co. Inc's ("American Tack" or "Defendant") *Motion to Strike Plaintiff's Final Infringement Contentions* (ECF No. 94) ("Motion").

## I. BACKGROUND

The relevant facts here include those articulated in SnapPower's Brief in Opposition to Defendant American Tack's *Motion to Strike Plaintiff's Final Infringement Contentions* (ECF No. 94). SnapPower includes those facts again here for ease of reference.

SnapPower served its Preliminary Infringement Contentions on American Tack September 3, 2024. *See* Exhibit A.[1] In its Preliminary Infringement Contentions SnapPower identifies the Accused Products as "the LumiCover and GloCover products, including those listed in the chart below, and any other products with substantially equivalent structure and function that have been designed, made, imported, offered, or sold by Defendant or at Defendant's request[.]" *Id.* at pg. 2. SnapPower also identified the following Accused Products by brand and name:

[1] All references to Exhibits are to the Exhibits attached to Declaration of Chad Nydegger in Support of SnapPower's Opposition to Motion to Strike Infringement Contentions ("N. Decl."). ECF No. 110-1.

| Product Brand | Title |
|---|---|
| Lumicover | Nightlight Wallplate |
| Lumicover | Power Failure Light |
| Lumicover | USB Charger Wallplate |
| GloCover | Nightlight Wallplate |
| GloCover | Motion Activated light |

*Id.* SnapPower served Updated Preliminary Infringement Contentions September 19, 2024. *See* Exhibit B. American Tack made no objection to this update. At that time, SnapPower was not aware that American Tack was preparing to launch a redesign product; as far as SnapPower knew, the Gen 2 product identified in the contentions was the only design that American Tack was currently selling (or had sold since 2020).

SnapPower served its First Interrogatories on American Tack on September 27, 2024. *See* Exhibit C. Interrogatory No. 6 states:

> For each Asserted Claim of the Asserted Patents that You contend the Powered Cover Plates do not infringe, state in detail, for each Powered Cover Plate, the basis of that contention, including, but not limited to: (a) an identification of each individual limitation or element of the claims of the Asserted Patents and the specific basis for Your contention that the Powered Cover Plate does not infringe that limitation or element; and (b) all facts, information and Documents (by production number) that You assert support or are pertinent to that basis, including an identification of the individual(s) most knowledgeable about such facts, information and Documents and the Email Custodian(s) most likely to have Emails relating to such facts, information and Documents.

*Id.*, pg. 10. The Interrogatories define "Powered Cover Plate" to mean "a cover plate for an electrical receptacle with built-in functionality that does not plug into the receptacle, including without limitation the GloCover and LumiCover products of AmerTac." *Id.*, pg. 6. Thus, there can be no dispute that Interrogatory No. 6 covers American Tack's Gen 3 cover plate. Interrogatory No. 7 asks American Tack to detail all its design-around products and attempts. *See id.*

American Tack served its Response to SnapPower's First Set of Interrogatories on October 28, 2024. *See* Exhibit D. American Tack's responses to Interrogatory Nos. 6 and 7 do not identify the Gen 3 product and only provides information concerning its Gen 2 product that launched in 2017. *See id.*

American Tack first informed SnapPower that it was introducing the Gen 3 product in November 2024, two months after SnapPower had served its infringement contentions. *See* ECF No. 94-3 PageID 5852. American Tack provided CAD images of the Gen 3 design in January and February 2025, between four and five months after SnapPower served its infringement contentions. *See* ECF No. 95 PageID 6000 and ECF No. 95-1.

The difference between the Gen 2 and Gen 3 products is in the prongs of the products. However, the difference in the products is modest, as seen in following side-by-side comparison:

| **Gen 2 Product** | **Gen 3 Product** |
|---|---|
|  |  |
|  |  |

| Gen 2 Product | Gen 3 Product |
|---|---|
|  |   |
|  |  |

American Tack supplemented its interrogatory responses on April 16, 2025. Exhibit E. In doing so, American Tack did not supplement its response to Interrogatory 6. Although American Tack supplemented its response to Interrogatory 7, American Tack's supplemental response does not identify the Gen 3 product, and provides information solely concerning its Gen 2 product that launched in 2017. *See id.* American Tack served Amended Supplemental Responses to SnapPower's Interrogatory No. 7 on June 18, 2025. *See* Exhibit F. This supplemental response again does not identify the Gen 3 product and provides information solely concerning its Gen 2 product that launched in 2017. *See id.* American Tack has provided no further response to Interrogatory Nos. 6 and 7 and has not identified the Gen 3 product in its responses as it was required to do. *See id.*

Despite not providing information concerning its Gen 3 product in response to Interrogatory Nos. 6 and 7, American Tack now concedes the Gen 3 product was developed

during the pendency of this case and even calls it a "powered cover plate." *See* ECF No. 94, pg. 3 ("on November 15, 2024, American Tack disclosed to SnapPower that it had begun implementing and transitioning to two new powered cover plate designs"). American Tack also argues that its Gen 3 product was designed during the pendency of this case to be a design-around cover plate to avoid SnapPower's related patents for which SnapPower obtained a General Exclusion Order. *See* ECF No. 94-3 PageID 5891 ("The new fin design is a design-around relating to the patents asserted in the CBP matter"). SnapPower did not obtain images of American Tack's new Gen 3 design until late January and February 2025. *See* ECF No. 95 PageID 6000 and ECF No. 95-1.

After learning of the existence of the Gen 3 products, SnapPower sought confirmation that American Tack's discovery responses included all responsive information concerning the Gen 3 product because that product fell within the definition of "Powered Cover Plate" used in SnapPower's discovery requests. *See* Exhibit G. American Tack confirmed that its discovery responses included all responsive information concerning its Gen 3 products. *See id.* SnapPower also asserted that the Gen 3 products were covered by SnapPower's Preliminary Infringement contentions because it fell within the definition of "Accused Products." *See id.* Indeed, American Tack sold its Gen 3 Products under the ***same brands and product names*** as its Gen 2 products. Consequently, American Tack's arguments that its Gen 3 products were not "Accused Products" in the case was frivolous.

Although SnapPower maintained that the Gen 3 products fell within the definition of "Accused Product" in SnapPower's Preliminary Infringement Contentions, and although American Tack had never identified any substantive difference between its Gen 3 and Gen 2 products relevant to the patents asserted in this case, to appease American Tack's complaint that

the Preliminary Infringement Contentions did not cover the Gen 3 products, SnapPower timely served Final Infringement Contentions that included claim charts to the Gen 3 product on July 11, 2025. *See* Exhibit H. Importantly, in the Gen 3 claim charts SnapPower points to the same structures on the Gen 3 product that it identified as satisfying each claim element in the Gen 2 products. *Compare* Exhibit B *with* Exhibit H.[2]

Thus, American Tack has long known that American Tack has considered the Gen 3 product to be included in the "Accused Products" at issue in this case. *See* Exhibit G. SnapPower also informed American Tack that "SnapPower has supplemented its infringement contentions ***because American Tack has complained that the Gen 3 product was not expressly addressed in the contentions***, despite American Tack not identifying any relevant difference pertaining to infringement between its Generation 2 and 3 products as requested by Interrogatory No. 6." Ex. I. (emphasis added). SnapPower concluded, "In light of these points, SnapPower has ample cause to amend. SnapPower's view is that this is not an issue that merits the Court's attention, but if American Tack wants to pursue it further, let us know your availability to confer." *Id.*

American Tack did not respond. Instead, American Tack filed its Motion to Strike (ECF No. 94) on July 23, 2025. SnapPower filed its response in opposition on August 13, 2025, and filed this Motion to Amend concurrently with it.

## II. Legal Standard

Local Patent Rules provide that "[a]mendment of preliminary or final infringement contentions . . . may be made only by order of the presiding judge upon a showing of good cause." Misc. Order No. 62, 3-7. "A party seeking amendment ... must include in its motion to

---

[2] SnapPower's final infringement charts map the Asserted Claims against both the Gen 2 and Gen 3 products, identifying the same structures as corresponding to the same claim elements. The only exception is that dependent claim 7 of the '788 Patent is not asserted against the Gen 3 product.

amend a statement that the newly discovered accused instrumentalities... were not known to that party prior to the motion despite diligence in seeking out same." Misc. Order. No. 62, 3-7(b).

In determining whether to grant leave to amend infringement contentions past a deadline to do such, courts in the Northern District of Texas have considered the following factors: (1) good cause to amend, looking at the reason for delay and whether the party was diligent; (2) the importance of what the court is excluding; (3) a lack of prejudice in allowing the thing that would be excluded; and (4) the availability of a continuance to cure any such prejudice. *See CommScope Techs. LLC v. Dali Wireless, Inc.*, No. 3:16-CV-0477-M, 2018 WL 4566130, *5-7 (N.D. Tex. Sept. 21, 2018) (denying in-part a motion to strike infringement contentions and allowing for amendment in-part where the nonmovant did not seek leave and no express exception within the local patent rules applied, but the nonmovant demonstrated diligence and that unfair prejudice would not occur upon allowing the amendment); *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, 2009 WL 81874, at *3 (E.D. Tex. Jan. 12, 2009).

The tests for determining whether to allow a party to supplement infringement contentions and for determining whether to strike infringement contentions are essentially the same." *Davis-Lynch, Inc. v. Weatherford Int'l, Inc.*, No. CIV.A. 6:07-CV-559, 2009 WL 81874, at *3 (E.D. Tex. Jan. 12, 2009).

**a. Good Cause**

Under the Local Patent Rules, "good cause" may include newly discovered accused instrumentalities or newly discovered bases for claiming infringement. *See* Misc. Order No. 62, 3-7(b). The Federal Circuit holds that good cause "requires a showing of diligence." *O2 Micro Int'l*, 467 F.3d at 1366; *see also* Misc. Order. No. 62, 3-7(b) ("A party seeking amendment ... must include in its motion to amend a statement that the newly discovered accused instrumentalities…were not known to that party prior to the motion despite diligence in seeking

out same."); *Summit 6 LLC v. HTC Corp.*, No. 7:14-CV-00014-O, 2013 WL 11514929, at *2 (N.D. Tex. Nov. 16, 2014) (granting a motion to amend in-part for newly discovered products to be added and denying in-part by not allowing historical products known and publicly available before commencement of the action) "Diligence is the most important factor." *LSP Prods. Grp., Inc. v. Oatey Co.*, No. 3:19-CV-00642-M, 2020 WL 4923995, *2 (N.D. Tex. Aug. 20, 2020). As part of this analysis, Courts also look at the reason for the delay in filing the infringement contentions. *See Davis-Lynch, Inc.*, 2009 WL 81874, at *3.

Reasonable diligence and good cause may be shown where development of the new product at issue began during the pendency of the litigation, the nonmovant does not come to know about the new product until after initial infringement contentions are served, the movant chooses not to disclose information about the new product in response to interrogatories seeking information about design-arounds and product development, and the final infringement contentions are filed within the formal deadline set by the court. *See Abiomed, Inc. v. Maquet Cardiovascular LLC*, No. CV 16-10914-FDS, 2020 WL 3868803, at *3–4 (D. Mass. July 9, 2020); *Nuance Commc'ns, Inc. v. Abbyy Software House*, 2012 WL 2427160, at *2 (N.D. Cal. June 26, 2012). A showing of reasonable diligence in not defeated merely by showing the party establishing good cause could have filed its infringement contentions months earlier. *See Abiomed, Inc.*, No. CV 16-10914-FDS, 2020 WL 3868803, at *4-5; *Nuance Commc'ns*, 2012 WL 2427160, at *2.

In the Northern District of Texas, good cause and sufficient diligence exist where discovery was diligently sought relating to the newly discovered product and the plaintiff diligently made the defendant informally but actually aware the new product was an accused product so the defendant had plenty of time to construct its defenses, even though the plaintiff

could have sought formal leave to amend months sooner. *See TurboChef Techs., Inc. v. Garland Com Indus., LLC*, No. 3-07-CV-1330-F, 2010 WL 11618098, at *2 (N.D. Tex. Mar 9, 2010) (granting leave to amend). Diligence is also found where a plaintiff engages with a defendant in a series of conferences to resolve the disagreement over which products are included. *See Nidec Corp. v. LG Innotek Co.*, No. 6:07CV108-LED-JDL, 2009 WL 3673253 at *2 (E.D. Tex. Sept. 2, 2009); *Mass Engineered Design v. Egrotron, Inc.,* No. 2:06–cv–272, 2008 WL 1930299, at *3–4 (E.D.Tex. Apr.30, 2008) (granting leave to amend where defendant was uncooperative as to discovery of products not explicitly listed in the original infringement contentions).

**b. The importance of what would be excluded by striking the contentions**

In weighing the "importance of what the court is excluding" factor, courts consider the impact the excluded content will have on the case and whether allowing or striking the amended infringement contentions would deter game-playing, deter actual violation of the rules, or discourage voluntary exchange of information. *Davis-Lynch, Inc.*, No. CIV.A. 6:07-CV-559, 2009 WL 81874, at *4; *O2 Micro, Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366 (Fed.Cir.2006). Additionally, the relative importance of including products is indicated by how much diligence should have been required. *See id.*

The importance of particular matter weighs in favor of amendment where it would allow for litigation to be combined into one case rather than split into separate cases for parties to litigate, even when exclusion of products would not result in dismissal of the movant's case entirely. *See Summit 6 LLC*, No. 7:14-CV-00014-O, 2013 WL 11514929, at *2; *TurboChef Techs., Inc.*, No. 3-07-CV-1330-F, 2010 WL 11618098, at *2 ("allowing the Plaintiffs to amend is critical to the important goal of timely resolving the entire dispute between these parties").

**c. Prejudice**

To determine whether a party would be prejudiced, courts consider whether the proposed addition of the new accused product introduces a new theory of infringement that would unfairly broaden the scope of the case. *See Abiomed, Inc.*, No. CV 16-10914-FDS, 2020 WL 3868803, at *4-5; *Zest IP Holdings, LLC v. Implant Direct MFG, LLC*, 2013 U.S. Dist. LEXIS 53664, at *11-12, 2013 WL 1626111 (S.D. Cal. Apr. 15, 2013) (granting motion to amend infringement contentions to add updated version of accused product, where plaintiff argued that the same patent claims and infringement theories applied); *Digital Reg of Texas, LLC v. Adobe Sys.*, 2014 U.S. Dist. LEXIS 58113, at *11-13, 2014 WL 1653131 (N.D. Cal. Apr. 24, 2014) (permitting addition of new version of software because the changes did not "fundamentally alter the theory of infringement" and noting that "a new version of software is not necessarily equivalent to an entirely new product"); *CommScope Techs.*, No. 3:16-CV-0477-M, 2018 WL 4566130, at *4 (N.D. Tex. Sept. 21, 2018) ("Dali is granted leave to amend because CommScope has been on sufficient notice of the general nature, contours, and direction of the contentions, and of the limited number of instrumentalities being accused"); *H-W Tech., L.C. v. Apple, Inc.*, No. 3:11-CV-651-G, 2012 WL 3650597, at *7 (N.D. Tex. Aug. 2, 2012*), report and recommendation adopted sub nom. H-W Tech., L.C. v. Amazon.com, Inc.*, No. 3:11-CV-0651-G BH, 2012 WL 3656293 (N.D. Tex. Aug. 27, 2012) (granting in-part and denying in-part a motion to strike and finding no unfair prejudice as to certain products because the party had been on sufficient notice of "the general nature, contours, and direction of Plaintiff's infringement contentions, and of the limited number of instrumentalities being accused" but also striking certain products because the plaintiff did not act with diligence when it knew of the product before it filed its first infringement contentions and completely failed to specifically identify that product);*cf. Davis-*

*Lynch, Inc.*, No. CIV.A. 6:07-CV-559, 2009 WL 81874, at *4-5; (denying the addition of fifty-two additional products where there was some prejudice and no diligence shown).

District courts have found that a party may move to add a new or updated product without prejudicing the non-moving party if that addition does not substantially change the asserted infringement theory. *See Bascom Glob. Internet Servs.*, No. 3:14-CV-3942-M, 2017 WL 11678906, at *2 (allowing amendment in-part to add a new product even after claim construction stating, "while Defendant points to a potential impact on claim construction, it does not specify any claim language that would be affected, and the need to revisit claim construction is not readily apparent")*; ClearPlay, Inc. v. DISH Network LLC*, No. 2:14-cv-00191, 2019 WL 1318348 at *3, 2019 U.S. Dist. LEXIS 48417 at *7 (D. Utah Mar. 22, 2019) (unpublished)*; Abiomed, Inc.*, No. CV 16-10914-FDS, 2020 WL 3868803, at *4-5.

Products that are materially identical with respect to the relevant claim limitations at issue do not materially alter the infringement analysis of the claim limitation. *See Bascom Glob. Internet Servs., Inc.*, No. 3:14-CV-3942-M, 2017 WL 11678906, at *2. Meaning, where the changes made to the new, updated product do not materially alter the infringement analysis of the claim limitations, prejudice does not exist. *See Clearplay, Inc.*, No. 2:14-cv-00191, 2019 WL 1318348 at *3, 2019 U.S. Dist. LEXIS 48417 at *7. However, prejudice may exist when the amendment was a change to the theory of infringement that would likely have meant re-opening of *Markman* proceedings and extending discovery. *Kruse Tech. P'ship v. Volkswagen AG*, 544 F. App'x 943, 953 (Fed. Cir. 2013) (unpublished).

Finally, prejudice to the nonmovant may be outweighed by the nonmovant having unofficial but actual notice of a plaintiff's intention to accuse the newly discovered product of infringing. *See TurboChef Techs., Inc.*, No. 3-07-CV-1330-F, 2010 WL 11618098, at *3 (finding

no unfair prejudice because defendant had actual notice but not formal notice even though claim construction had concluded and the defendant argued it would have approached discovery differently had it had formal notice, and where the trial was still eight months out and discovery had not completely closed).

## III. ANALYSIS

### a. SnapPower Seeks to Amend to Expressly Include Accused Instrumentalities Not Known to SnapPower Prior to Filing Initial Infringement Contentions

Pursuant to Local Patent Rule 3-7(b), SnapPower certifies the Gen 3 product was discovered after SnapPower filed its Initial Infringement Contentions in September 2024. The Gen 3 was not known by SnapPower previous to American Tack's November 2024 disclosure despite diligence in seeking out the same.

### b. The Court Should Grant Leave to Amend Because Good Cause Exists, There Is No Unfair Prejudice to American Tack, and the Gen 3 Products are Important to Judicial Efficiency.

SnapPower has good cause and has been diligent under the circumstances, American Tack has long known the Gen 3 product was included in the Preliminary Infringement Contentions as an Accused Product at issue in this case, including the Gen 3 product promotes judicial efficiency and deters gamesmanship, and the changes made to Gen 3 product do not materially alter the infringement analysis of the claim limitations.

#### 1. Good cause exists because Gen 3 was developed during this litigation, disclosed to SnapPower after it filed its Preliminary Infringement Contentions, Is an "Accused Product" under the Preliminary Infringement Contentions, and American Tack identified no substantial difference in Gen 3 in any of its Interrogatory Responses.

Reasonable diligence and good cause are shown where development of the new product at issue occurred during the pendency of the litigation, the nonmovant/plaintiff does not discover the new product until after serving its preliminary infringement contentions, the

movant/defendant chooses not to disclose information about the new product in response to interrogatories seeking information about design-arounds and product development, and the final infringement contentions are filed within the formal deadline set by the court. *See Abiomed,* 2020 WL 3868803, at *3–4; *Nuance Commc'ns*, 2012 WL 2427160, at *2. When these facts are established, that the party showing good cause could have filed its infringement contentions months earlier does not defeat reasonable diligence and good cause. *See Abiomed, Inc.*, No. CV 16-10914-FDS, 2020 WL 3868803, at *4-5; *Nuance Commc'ns*, 2012 WL 2427160, at *2.

Diligence is bolstered when discovery was diligently sought relating to the newly discovered product and the plaintiff diligently made the defendant informally but actually aware the new product was an accused product so the defendant had plenty of time to construct its defenses. *See TurboChef Techs., Inc.,* No. 3-07-CV-1330-F, 2010 WL 11618098, at *2 (granting leave to amend); *Mass Engineered Design,* No. 2:06–cv–272, 2008 WL 1930299, at *3–4 (granting leave to amend where defendant was uncooperative as to discovery of products not explicitly listed in the original infringement contentions).

American Tack did not disclose the existence of the Gen 3 product until November of 2024, (*see* N. Decl. ¶8; ECF No. 94, pg. 3) and did not provide pictures of the Gen 3 product sufficient to perform an infringement analysis until late January and February 2025 (*see* N. Decl. ¶9; ECF No. 95 PageID 6000 and ECF No. 95-1), well after SnapPower had filed its Preliminary Infringement Contentions in September 2025. Consequently, American Tack could not have included claim charts for Gen 3 in its Preliminary Infringement Contentions. American Tack slightly redesigned its Gen 2 product during the pendency of this case to try and circumvent SnapPower's patents underlying its GEO. That redesign resulted in minor modifications to the Gen 3 product. Importantly, the slight changes to the Gen 3 product do not raise new theories of

infringement in this case, which is unsurprising as the changes were designed to address claim language that is not found in claims being asserted in this case.

Given that the Gen 3 product was already included in SnapPower's "Accused Products" identified in its Preliminary Infringement Contentions and the minor modifications to the Gen 3 product did not alter SnapPower's infringement analysis, there was no need for SnapPower to amend its infringement contentions to chart the Gen 3 product. Additionally, American Tack's responses to interrogatories served after introduction of the Gen 3 product, and particularly its responses to SnapPower's Interrogatory Nos. 6 and 7 specifically addressing non-infringement and design-around products, did not identify any difference between the Gen 2 and Gen 3 products. *See* Exhibits D, E, and F. In fact, those responses did not mention the Gen 3 product at all. *See id.* Moreover, American Tack expressly confirmed that its discovery responses included all relevant information about the Gen 3 product. *See* Exhibit G. Thus, all substantive information American Tack provided supported SnapPower's position that the Gen 3 product was already covered in its Preliminary Infringement Contentions and those contentions adequately informed American Tack of SnapPower's infringement positions concerning both the Gen 2 and Gen 3 products.

Although American Tack informally asserted that the Gen 3 product was not an "Accused Product" in this case, it never updated its interrogatory responses to assert that position, never provided any analysis or reasoning to support that assertion, and confirmed that its substantive discovery responses included ***all*** relevant information concerning the Gen 3 product. Given American Tack's delay in disclosing the Gen 3 product and failure to provide ***any*** substantive reason for why the Gen 3 product was not covered by SnapPower's Preliminary

Infringement Contentions, SnapPower could not have been dilatory in the timing of amending its infringement contentions.

Finally, American Tack had informal but actual notice SnapPower considered the Gen 3 product to be part of the Accused Products asserted. After learning of the existence of the Gen 3 products, SnapPower sought confirmation that American Tack's discovery responses included all responsive information concerning the Gen 3 product because that product fell within the definition of "Powered Cover Plate" used in SnapPower's discovery requests. *See* N. Decl. ¶13; Exhibit G. American Tack expressly confirmed that its discovery responses included all responsive information concerning its Gen 3 products. *See* N. Decl. ¶13; Exhibit G. Critically, SnapPower also asserted that the Gen 3 products were covered by SnapPower's Preliminary Infringement contentions because it fell within the definition of "Accused Products." *See* Exhibit G.

To appease American Tack's informal complaints that the Gen 3 product was not an "Accused Product" in the case despite no substantive reasoning to support that position, SnapPower timely served its Final Infringement Contentions on July 11, 2025. As such, SnapPower was reasonably diligent in filing its Final Infringement Contentions under the circumstances and this factor weighs in favor of SnapPower and denying the Motion.

**2. The importance of the information to the litigation weighs in favor of denying the Motion.**

To determine the importance of the amendments to the litigation, courts consider whether allowing or striking the amended infringement contentions would deter game-playing, deter actual violation of the rules, or discourage voluntary exchange of information. *Davis-Lynch, Inc.*, No. CIV.A. 6:07-CV-559, 2009 WL 81874, at *4; *O2 Micro, Int'l Ltd. v. Monolithic Power Sys., Inc.,* 467 F.3d 1355, 1366 (Fed. Cir. 2006).

In this case the importance of the additional information in the Final Infringement Contentions, and specifically the claim charts for the Gen 3 product, is neutral as a substantive matter. This neutrality arises because the Gen 3 product is already covered by the Preliminary Infringement Contentions as explained above. Thus, even were the Court to grant the Motion and strike the Final Infringement Contentions, that would have no impact on the scope of this case. As explained above, the Gen 3 product falls expressly within the definition of "Accused Product" in SnapPower's Preliminary Infringement Contentions, especially because the Gen 3 products are sold under the exact same brands and product names specifically listed in the Preliminary Infringement Contentions. Moreover, SnapPower's infringement positions for the Gen 3 product mirror its infringement contentions for the Gen 2 product. In other words, SnapPower points to the same structures on the Gen 3 products as satisfying the elements of the asserted claims as it points to on the Gen 2 products.

However, the importance of the additional information in the Final Infringement Contentions weighs against granting the Motion as a procedural matter. If the Court grants the Motion and strikes the Final Infringement Contentions, then American Tack will no doubt use that order as a "hook" to argue that the Gen 3 products are not at issue in this case despite the Gen 3 products being included in the Preliminary Infringement Contentions. American Tack will certainly make this argument despite having never identified any relevant difference between the Gen 2 and Gen 3 products in its discovery responses and despite it expressly confirming that it has not withheld ***any*** documents or information concerning the Gen 3 product during discovery based on its informal position that the Gen 3 product is not an "Accused Product" in this case. In other words, granting the Motion to Strike will only spawn more motion practice by American Tack to try and exclude the Gen 3 product from SnapPower's Preliminary Infringement

Contentions. This is the type of game-playing that weighs against striking the contentions and in favor of denying the Motion.

Additionally, striking the contentions would condone American Tack's refusal to voluntarily provide information about the Gen 3 product during discovery and encourage future litigants to employ similar tactics. As noted above, American Tack has never identified any substantive difference between the Gen 2 and Gen 3 products relevant to the issues in this case despite such information expressly called for in at least Interrogatory Nos. 6 and 7. American Tack's refusal to provide such information contradicts its representations that no documents or information had been withheld from its discovery responses. *See* Exhibit G. Had American Tack provided such information, that would have given SnapPower a reason to amend its infringement contentions to address any such contention. Having failed to provide that information earlier, the Court should not entertain arguments by American Tack now that there are relevant substantive differences between the products that create prejudice to American Tack at this juncture. Thus, denying the Motion will further the objective of encouraging partis to timely provide relevant information voluntarily, and this factor weighs in favor of denying the Motion.

**3. The Final Infringement Contentions do not prejudice American Tack and this factor weighs in favor of denying the Motion.**

Where the proposed addition of the new accused product does not introduce a new theory of infringement that would unfairly broaden the scope of the case, prejudice does not exist. *See Abiomed, Inc.*, No. CV 16-10914-FDS, 2020 WL 3868803, at *4-5; *Zest IP Holdings, LLC v. Implant Direct MFG, LLC*, 2013 U.S. Dist. LEXIS 53664, at *11-12, 2013 WL 1626111 (S.D. Cal. Apr. 15, 2013) (granting motion to amend infringement contentions to add updated version of accused product, where plaintiff argued that the same patent claims and infringement theories applied); *Digital Reg of Texas*, 2014 U.S. Dist. LEXIS 58113, at *11-13, 2014 WL 1653131

(permitting addition of new version of software because the changes did not "fundamentally alter the theory of infringement" and noting that "a new version of software is not necessarily equivalent to an entirely new product"). Further, prejudice may be outweighed by the defendant having informal but actual notice of a plaintiff's intention to accuse the newly discovered product of infringing. *See TurboChef Techs., Inc.*, No. 3-07-CV-1330-F, 2010 WL 11618098, at *3 (finding no unfair prejudice even though claim construction had concluded and the defendant argued it would have approached discovery differently had it had formal notice, and where the trial was still eight months out and discovery had not completely closed).

As detailed above, SnapPower's Interrogatory No. 6 required American Tack to identify any differences in its Gen 3 product it alleged were material to infringement in this litigation. *See* Exhibit C. American Tack did not identify any such differences. Given the near identical construction of the Gen 3 product compared to the Gen 2 product as seen in the photos provided above, SnapPower should not have to guess at American Tack's non-infringement arguments for the Gen 3 product that differ from its non-infringement arguments for the Gen 2 product.

American Tack argues that it would be prejudiced because it is "unable to issue timely discovery related to SnapPower's Final Infringement Contentions…." ECF No. 94 PageID 5860. But American Tack does not identify ***any*** such discovery that it would have sought, which is unsurprising and SnapPower would not be expected to have information about American Tack's product introduced during litigation. Furthermore, as detailed above, American Tack has expressly represented that its discovery responses included all responsive information and documents concerning its Gen 3 product. *See* Exhibit G. It is disingenuous for American Tack to now claim that it did not know that the Gen 3 product was at issue during the discovery period.

American Tack also complains that it "is left scrambling to digest, analyze, and incorporate SnapPower's Final Infringement Contentions into any depositions scheduled prior to the close of discovery." But American Tack elected to take only ***one*** deposition in this case, the Rule 30(b)(6) deposition of SnapPower on July 29, 2025. Although the Final Infringement Contentions were timely served on July 11, 2025, American Tack's Rule 30(b)(6) deposition notice did not identify ***either*** SnapPower's Preliminary or Final Infringement Contentions as a topic. *See* Exhibit J. American Tack's complaint about "scrambling" to include the Final Infringement Contentions "into any deposition" lacks credibility given it did not identify ***any*** contentions as a topic in the sole deposition it took in the case. Additionally, the Rule 30(b)(6) deposition of American Tack is scheduled for August 14, more than a month after service of the Final Infringement Contentions.

American Tack argues that the Final Infringement Contentions "raises new issues that were not raised during claim construction." ECF No. 94 PageID 5861. The only such "new issue" it identifies is the construction of "front insulation." *Id.* The Court construed 49 disputed claim terms in this case. ECF No. 84. The Court rejected American Tack's efforts to narrow each of those 49 terms, instead finding that each of the 49 claim terms is to be given its plain and ordinary meaning as argued by SnapPower. *See id.* Those claim terms included the claim phrases "the prong comprises…(rear/***front) insulation*** / the prong comprises…an insulating element" (*id.* at PageID 5418) "***front insulation*** abutting the rear insulation" (*id.* at PageID 5420), and "further enclosing the interior space, wherein the rear insulation and ***front insulation*** define an opening to the interior space" (*id.* at PageID 5420). The Court rejected American Tack's argument for each of those claims terms, instead giving each its plain and ordinary meaning.

Thus, the parties have already presented their arguments concerning "front insulation" and the Court has found that the term has its plain and ordinary meaning.

SnapPower's Final Infringement Contentions do not alter the issue of what is a "front insulation" in the slightest. The only difference between the "front insulation" in the Gen 2 product and the Gen 3 product is that there is more "front insulation" in the Gen 2 product; SnapPower asserts that the same structure qualifies as the "front insulation" in both products as shown here:

**<u>Gen 2 Product</u>** **<u>Gen 3 Product</u>**




Whereas the only difference between the Gen 2 and Gen 3 products is a slight modification of the prongs, SnapPower's infringement contentions for the Gen 3 are virtually identical to those of the Gen 2 product. American Tack's complaint that it must digest "50+ new pages of claim charts related to the Generation 3 design" (ECF No. 94 PageID 5855) is a gross exaggeration given those "50+ new pages of claim charts related to the Generation 3 design" mirror the claim charts for the Gen 2 given the similarity of the Gen 2 and Gen 3 products.

Last, American Tack argues that SnapPower's timely-filed Final Infringement Contentions "leaves American Tack at a severe time disadvantage" because "SnapPower had at least five months to prepare its case for the Generation 3 design, whereas American Tack's

expert report is due less than two months after service of SnapPower's Final Infringement Contentions, unfairly forcing American Tack to prepare its defense within a significantly abbreviated time period." ECF No. 94 PageID 5861. First, this position is curious given that the Gen 3 product was developed *during the pendency of this litigation*. American Tack's failure to "prepare its defense" to infringement prior to launching that product during litigation is tantamount to an admission it took no consideration of infringement of the patents in this case when designing and launching the Gen 3 product despite clear knowledge of those patents. Second, American Tack's expert report on non-infringement for the Gen 3 product should be largely the same as for the Gen 2 given the similarity of the products. Any additional work will be minimal. American Tack's complaint of a "severe time disadvantage" is a fabrication that withers under even light scrutiny.

American Tack also argues that "SnapPower may always file a separate lawsuit accusing the Generation 3 design of infringement." ECF No. 94 PageID 5862. While a true statement, such a new lawsuit to assert the *same* patents in this case against a *nearly identical product* would be a colossal waste of judicial resources.

Further, any prejudice the Court may acknowledge is outweighed by American Tack having informal but actual notice that SnapPower considered the Gen 3 product to be part of the Accused Products asserted. After learning of the existence of the Gen 3 products, SnapPower sought confirmation that American Tack's discovery responses included all responsive information concerning the Gen 3 product because that product fell within the definition of "Powered Cover Plate" used in SnapPower's discovery requests. *See* N. Decl. ¶ 13, Exhibit G. American Tack expressly confirmed that its discovery responses included all responsive information concerning its Gen 3 products. *See* Exhibit G. SnapPower gave actual notice because

it asserted that the Gen 3 products were covered by SnapPower's Preliminary Infringement contentions because it fell within the definition of "Accused Products." *See* N. Decl. ¶ 14; Exhibit G.

American Tack has not established any *unfair* prejudice it would suffer by allowing the Final Infringement Contentions to stand and this factor weighs in favor of denying the Motion.

**4. No continuance is needed given the Gen 3 product has been in the case all along and is nearly identical to the Gen 2 product charted in the Preliminary Infringement Contentions.**

American Tack argues that allowing SnapPower's Final Infringement Contentions will require "a complete restart of the schedule." ECF No. 94 PageID 5862. Not so. As detailed above, American Tack has expressly represented that it already has produced all documents and information concerning the Gen 3 product. Consequently, SnapPower needs no additional discovery on the Gen 3 product. American Tack has not identified ***any*** discovery that it would need to take concerning the Gen 3 product, which is unsurprising as one would not expect SnapPower to have information concerning American Tack's Gen 3 product. As also discussed above, American Tack did not identify SnapPower's Preliminary or Final Infringement Contentions as a Rule 30(b)(6) topic in the deposition of SnapPower that American Tack took ***after*** service of the Final Infringement Contentions. *See* Exhibit J. Further, as detailed above, American Tack knew that the Gen 3 products were at issue during discovery because it produced documents and information concerning the Gen 3 product in discovery responses. There is no need to conduct additional discovery on the Gen 3 product.

American Tack has argued that the Court would need to redo claim construction to "address newly disputed terms." ECF No. 94 PageID 5862. But the only claim term American Tack identifies is the term "front insulation" addressed above, which the Court has already construed and found to have its plain and ordinary meaning. ECF No. 84 PageID 5418 and 5420.

Having already construed all 49 disputed terms according to their plain and ordinary meaning, American Tack has not identified any claim term the Court needs to construe in light of the Final Infringement Contentions. The Court need not modify the current schedule at all, much less revisit clam construction or do a "complete restart."

American Tack has failed to establish that it would suffer any prejudice by allowing the Final Infringement Contentions. The Gen 3 product introduced during the pendency of this case is already included in the Preliminary Infringement Contentions. American Tack has long known via actual but informal notice that SnapPower was pursuing infringement claims against the Gen 3 product and produced complete discovery responses on that product during fact discovery. Indeed, SnapPower only included separate claim charts on the Gen 3 product to appease American Tack's complaints that it was not separately charted despite being nearly identical to the Gen 2 product and being sold under the identical brands and product names as the Gen 2 product. The Gen 3 product has been in this case since American Tack revealed it, and its inclusion does not expand the scope of the case or introduce new theories of infringement. Thus, this Court should follow the numerous other courts that have allowed Final Infringement Contentions in similar situations. *See Abiomed, Inc.*, No. CV 16-10914-FDS, 2020 WL 3868803, at *4-5; *CommScope Techs. LLC*, No. 3:16-CV-0477-M, 2018 WL 4566130, at *4; *Zest IP Holdings*, 2013 WL 1626111; *Digital Reg of Texas*, 2014 WL 1653131; *ClearPlay*, 2019 WL 1318348 at *3.

## IV. CONCLUSION

For the reasons stated above, SnapPower respectfully the Court find good cause and grant SnapPower leave to amend its infringement contentions.

DATED this 13th day of August, 2025.

WORKMAN NYDEGGER

By: /s/ *Chad E. Nydegger*

Chad E. Nydegger (Bar No. 9964)
*cnydegger@wnlaw.com*
Sarah M. Terry (Bar No. 19092)
*sterry@wnlaw.com*
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

*Attorneys for SnapRays, LLC dba SnapPower*

## CERTIFICATE OF CONFERENCE

Pursuant to Northern District of Texas Local Rule 7.1(b), counsel for SnapPower certifies it conferred in good faith with counsel for AmerTac in an effort to resolve the parties' dispute concerning the amending of SnapPower's infringement contentions.

The parties met and conferred via video conference on August 8, 2025 at which SnapPower's counsel Chad Nydegger and AmerTac's counsel Michael Griggs and Geoffrey Behr were in attendance. Counsel for AmerTac opposed the motion.

DATED this 13th day of August, 2025.

WORKMAN NYDEGGER

By: /s/ *Chad E. Nydegger*

Chad E. Nydegger (Bar No. 9964)
*cnydegger@wnlaw.com*
Sarah M. Terry (Bar No. 19092)
*sterry@wnlaw.com*
WORKMAN NYDEGGER
60 East South Temple, Suite 1000
Salt Lake City, Utah 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707
Elliott J. Williams (OSB 144835)
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205

*Attorneys for SnapRays, LLC dba SnapPower*